SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| LAURA SEISINGER, | ) Arizona Supreme Court |
| | ) No. CV-08-0224-PR |
| Plaintiff/Appellant, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-CV 07-0266 |
| SCOTT SIEBEL, M.D., | ) |
| | ) Maricopa County |
| Defendant/Appellee. | ) Superior Court |
| | ) No. CV2004-015659 |
| | ) |
| | ) |
| | ) **O P I N I O N** |
| | ) |
| | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Michael D. Jones, Judge

**VACATED AND REMANDED**

_____

Opinion of the Court of Appeals, Division One
219 Ariz. 163, 195 P.3d 200 (App. 2008)

**VACATED**

_____


LAW OFFICES OF JAMES J. SYME, JR.                              Goodyear
     By   James J. Syme, Jr.
Attorneys for Laura Seisinger

JONES, SKELTON & HOCHULI, P.L.C.                               Phoenix
     By   J. Russell Skelton
          Eileen Dennis GilBride
Attorneys for Scott Siebel

JENNINGS, STROUSS & SALMON, P.L.C.                             Phoenix
     By   John J. Egbert
          Jay A. Fradkin
Attorneys for Amicus Curiae Mutual
Insurance Company of Arizona

SNELL & WILMER, L.L.P.                                    Phoenix
    By   Barry D. Halpern
         Scott A. Shuman
         Rhonda Needham
Attorneys for Amici Curiae Arizona Medical Association, American
Medical   Association,   Arizona   Hospital   and   Healthcare
Association,  Maricopa  County  Medical  Society,  Pima  County
Medical   Society,   Arizona   Osteopathic   Medical   Association,
American Association of Orthopaedic Surgeons, Arizona Chapter of
the  American  Academy  of  Orthopaedic  Surgeons,  The  American
College  of  Obstetricians  and  Gynecologists,  American  College  of
Cardiology,  Arizona  Chapter  of  the  American  College  of
Cardiology,  Arizona  Society  of  Anesthesiologists,  and  Arizona
Radiological Society

LAW OFFICE OF JOJENE MILLS, P.C.                          Tucson
    By   JoJene E. Mills
Attorneys for Amicus Curiae Arizona Trial Lawyers Association
_____

**H U R W I T Z**, Justice

¶1      The  issue  before  us  is  whether  A.R.S.  § 12-2604(A)
(Supp.  2008),  which  governs  proof  of  the  standard  of  care  in
medical  malpractice  cases,  violates  the  separation  of  powers
doctrine.

## I.

¶2      Scott  Siebel,  M.D.,  an  anesthesiologist,  administered
a spinal epidural to Laura Seisinger in 2002.  Two years later,
Seisinger filed a complaint against Seibel alleging malpractice.
Seisinger subsequently disclosed that J. Antonio Aldrete, M.D.,
would  testify  as  an  expert  about  the  appropriate  standard  of
care.

¶3       When the defendant in a medical malpractice action is
a  specialist,  § 12-2604(A)  requires  an  expert  witness  on  the

standard of care to have devoted a majority of his professional time in the year preceding the incident at issue to active clinical practice or teaching in the same specialty.[1]  Dr. Siebel

_____

[1]    Section 12-2604(A) provides:

A. In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and the person meets the following criteria:

1. If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty or claimed specialty as the party against whom or on whose behalf the testimony is offered.  If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist who is board certified, the expert witness shall be a specialist who is board certified in that specialty or claimed specialty.

2. During the year immediately preceding the occurrence giving rise to the lawsuit, devoted a majority of the person's professional time to either or both of the following:

(a) The active clinical practice of the same health profession as the defendant and, if the defendant is or claims to be a specialist, in the same specialty or claimed specialty.

(b) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession as the defendant and, if the defendant is or claims to be a specialist, in an accredited health

3

filed a motion contending that Dr. Aldrete, a retired anesthesiologist, did not meet the temporal practice or teaching requirement in § 12-2604(A)(2). Seisinger did not dispute the motion's factual assertions, but argued that § 12-2604(A) conflicts with Arizona Rule of Evidence 702 and violates the separation of powers doctrine set forth in Article 3 of the Arizona Constitution. Rule 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education" may provide testimony that "will assist the trier of fact to understand the evidence or to determine a fact in issue."

¶**4** The superior court rejected Seisinger's constitutional argument and granted the motion in limine. The court gave Seisinger additional time to disclose a new expert qualified

_____

professional school or accredited residency or clinical research program in the same specialty or claimed specialty.

3. If the defendant is a general practitioner, the witness has devoted a majority of the witness's professional time in the year preceding the occurrence giving rise to the lawsuit to either or both of the following:

(a) Active clinical practice as a general practitioner.

(b) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession as the defendant.

4

under § 12-2604(A). After she failed to do so, the court granted Dr. Siebel's motion to dismiss.

¶5 The court of appeals reversed. *Seisinger v. Siebel*, 219 Ariz. 163, 164-65 ¶ 1, 195 P.3d 200, 201-02 (App. 2008). It held that § 12-2604(A) conflicts with Rule 702 because the statute categorically excludes potential experts qualified to testify under the Rule. *Id.* at 166-67 ¶¶ 9-13, 195 P.3d at 203-04. The court of appeals also held that § 12-2604(A) did not establish substantive rights. *Id.* at 169-70 ¶¶ 20-21, 195 P.3d 206-07. The court therefore found that the statute violated the separation of powers doctrine by infringing upon this Court's authority under Article 6, Section 5(5) of the Arizona Constitution to promulgate procedural rules. *Id.* at 170 ¶ 22, 195 P.3d at 207.

¶6 We granted review because the case involves the constitutionality of a statute and the issues presented are of statewide importance. *See* ARCAP 23(c). We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II.

### A.

¶7 The Arizona Constitution commands that the legislative, executive, and judicial departments "shall be separate and distinct, and no one of such departments shall

5

exercise the powers properly belonging to either of the others."
Ariz. Const. art. 3.  The Constitution also vests this Court
with "[p]ower to make rules relative to all procedural matters
in any court."  *Id.* art. 6, § 5(5).  Rules of evidence "have
generally been regarded as procedural in nature."  *State ex rel.*
*Collins v. Seidel*, 142 Ariz. 587, 590, 691 P.2d 678, 681 (1984).

**¶8**        Although we have occasionally said that procedural
rulemaking power is vested "exclusively" in this Court, *State v.*
*Hansen*, 215 Ariz. 287, 289 ¶ 9, 160 P.3d 166, 168 (2007); *Daou*
*v. Harris*, 139 Ariz. 353, 357-58, 678 P.2d 934, 938-39 (1984),
this statement is in some respects an oversimplification.  A
statutory procedural enactment is not automatically invalid.
*See Seidel*, 142 Ariz. at 591, 691 P.2d at 682 ("That we possess
the rule-making power does not imply that we will never
recognize a statutory rule.").  Rather, we recognize "reasonable
and workable" statutory enactments that supplement rather than
conflict with rules we have promulgated.  *Id*. (citation and
internal quotation marks omitted); *see Readenour v. Marion Power*
*Shovel*, 149 Ariz. 442, 445, 719 P.2d 1058, 1061 (1986) (defining
determinative issue as whether the statute "supplement[s] rather
than contradict[s]" an evidentiary rule).  Therefore, it is more
accurate to say that the legislature and this Court both have
rulemaking power, but that in the event of irreconcilable

6

conflict between a procedural statute and a rule, the rule prevails.

**¶9**     The legislature thus cannot repeal a rule of procedure or evidence. *Seidel*, 142 Ariz. at 591, 691 P.2d at 682. But a statute may "contradict" or effectively abrogate a rule even if there is no express repeal. Accordingly, the legislature cannot enact a statute that "provides an analytical framework contrary to the rules" of evidence. *Barsema v. Susong*, 156 Ariz. 309, 314, 751 P.2d 969, 974 (1988).

**¶10**     Determining whether a statute unduly infringes on our rulemaking power requires analysis of the particular rule and statute said to be in conflict. Our cases provide some guidance on purported conflicts between statutes and rules of evidence. In *Readenour*, this Court upheld against a separation of powers attack A.R.S. § 12-686(2), which makes inadmissible "as direct evidence of a defect" evidence of changes made by the manufacturer after "the product was first sold by the defendant." 149 Ariz. at 444 n.1, 719 P.2d at 1060 n.1. The allegedly conflicting evidence rule was Rule 407, which makes remedial measures taken after an event supposedly giving rise to liability inadmissible "to prove negligence or culpable conduct." Rule 407 excludes from its general prohibition evidence offered for other purposes, such as to prove "ownership, control, or feasibility of precautionary measures."

7

Readenour argued that the statute, by making inadmissible post-*sale* changes, conflicted with the Rule, which excludes only post-*incident* changes. *Readenour*, 149 Ariz. at 445, 719 P.2d at 1061.

¶11    We began from the proposition that "it is our duty to save a statute, if possible, by construing it so that it does not violate the constitution." *Id.* (citing *Ariz. Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981)). We therefore interpreted § 12-686(2), which prohibits evidence of changes only "as direct evidence of a defect," as permitting the uses of such evidence allowed under Rule 407. *Id.* This interpretation avoided any conflict between the statute and the exceptions in the Rule.

¶12    We then concluded that the statute's application to pre-injury but post-sale changes did not conflict with the Rule. *Id.* The Rule is silent on the admissibility of post-sale, pre-injury changes, so the statute did not expressly abrogate the Rule. Nor did the statute undermine the purposes of Rule 407. We concluded that the policy of the Rule is to encourage remedial measures, the probative value of the evidence excluded is not high, and the extension of the prohibition to this period fosters the policy embodied in the Rule. *Id.* at 445-46, 719 P.2d at 1061-62. We therefore "defer[red] to the legislative decisions regarding the use or exclusion of relevant evidence to

8

promote substantive goals of public policy such as accident prevention." *Id.* at 446, 719 P.2d at 1062.  We also noted that § 12-686(2) "is similar to a privilege statute, having both procedural and substantive aspects." *Id.*

¶13     In contrast, in *Barsema* we found that a statute unconstitutionally conflicted with a rule of evidence.  There, the statute at issue, A.R.S. § 12-569, prohibited "for any purpose" the admission of evidence that a witness has been or is covered by a certain type of medical malpractice insurer or has a financial interest in the operation of such an insurer. *Barsema*, 156 Ariz. at 311-12, 751 P.2d at 971-72.  The conflicting rule was Evidence Rule 411, which prohibits admission of evidence that "a person was or was not insured against liability . . . upon the issue whether the person acted negligently or otherwise wrongfully," but allows admission of such evidence when offered for another purpose, such as proof of "bias or prejudice of a witness."

¶14     Under Rule 411, evidence that a witness was insured could be admitted for purposes other than establishing liability if the trial judge found that it met the general Rule 402 requirement of relevancy and the Rule 403 requirement that its probative value was not "substantially outweighed by the danger of unfair prejudice" or other factors.  *Barsema*, 156 Ariz. at 313, 751 P.2d at 973.  In contrast, § 12-569 prohibited the use

of such evidence "for any purpose."  We were thus unable, as in *Readenour*, to construe the statute to avoid conflict with the rule.  Instead, the mandate of Rule 411 – that evidence of insurance offered for purposes other than to establish liability is to be evaluated on a case-by-case basis under Rules 402 and 403 – had been superseded by a statutory regime in which the evidence was always excluded.  We therefore concluded that § 12-569 unduly infringed on our rulemaking power because it does not "merely supplement[]" Rule 411, but rather "provides an analytical framework contrary to the rules."  *Id.* at 314, 751 P.2d at 974.

**B.**

¶15    In this case, the court of appeals held that § 12-2604(A) conflicted with Rule 702 "because the statute cannot be harmonized with the Rule."  *Seisinger*, 219 Ariz. at 169 ¶ 19, 195 P.3d at 206.  We agree.

¶16    Rule 702 permits expert testimony to "assist the trier of fact to understand the evidence or to determine a fact in issue" when a witness is "qualified as an expert by knowledge, skill, experience, training, or education."  "The test of whether a person is an expert is whether a jury can receive help on a particular subject from the witness.  The degree of qualification goes to the weight given the testimony, not its

admissibility." *State v. Davolt*, 207 Ariz. 191, 210 ¶ 70, 84 P.3d 456, 475 (2004) (citation omitted).

**¶17** Dr. Siebel argues that there is no conflict between the statute and the Rule because § 12-2604(A) simply assures that an expert witness has the qualifications required by the Rule. But the statute makes clear that its requirements are in addition to those in Rule 702. Section 12-2604(C) provides that "[t]his section does not limit the power of the trial court to disqualify an expert witness on grounds other than the qualifications set forth in this section." The expert therefore must both possess the qualifications required by Rule 702 *and* satisfy the additional requirements of § 12-2604(A).

**¶18** Thus, as the court of appeals noted, § 12-2604(A) "precludes a witness who is otherwise qualified under Rule 702 from testifying in a medical malpractice case unless he or she meets the additional criteria set forth in the statute." *Seisinger*, 219 Ariz. at 167 ¶ 13, 195 P.3d at 204. To be sure, a trial judge could conclude under Rule 702 that a particular physician who has not recently practiced or taught is not qualified to testify about the current standard of care. But, particularly when the standard of care has not materially changed during the period after a physician left active practice or teaching, a trial judge might also well conclude that the witness remains qualified through "knowledge, skill, experience,

11

training, or education" to assist the jury through expert testimony.  As to such a witness, the statute automatically produces a different result than the Rule might produce. Indeed, such was the obvious intent of the statute:  It is designed to limit which physicians are qualified to express expert opinions.  *See Minutes of Meeting: Hearing on S.B. 1036 Before the H. Comm. on Health*, 47th Leg., 1st Reg. Sess. (Ariz. Mar. 23, 2005) (statement of Sen. Robert Cannell, co-sponsor of measure containing § 12-2604(A), that "physicians do not want retired physicians to testify against them").

¶19    Consequently, we agree with the court of appeals that § 12-2604(A) and Rule 702 are in "direct conflict."  *Seisinger*, 219 Ariz. at 167 ¶ 13, 195 P.3d at 204.   In interpreting a similar statute, the Michigan Supreme Court reached precisely this conclusion, noting that the legislature "envisioned and intended that the statute would often compel different qualification determinations than the rule when applied to a given case."   *McDougall v. Schanz*, 597 N.W.2d 148, 153 (Mich. 1999).

¶20    Several federal cases have held that state statutes similar to § 12-2604(A) must be applied in diversity cases notwithstanding Federal Rule of Evidence 702.  *See, e.g.*, *Legg v. Chopra*, 286 F.3d 286, 291-92 (6th Cir. 2002); *see also McDowell v. Brown*, 392 F.3d 1283, 1294-95 (11th Cir. 2004)

12

(following *Legg*); *Miville v. Abington Mem'l Hosp.*, 377 F. Supp. 2d 488, 493 (E.D. Pa. 2005) (same). These cases, however, are not contrary to our conclusion that § 12-2604(A) conflicts with Arizona Rule of Evidence 702.

¶21 The federal cases interpret Federal Rule of Evidence 601, which provides that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law." Therefore, the conclusion by the federal courts that the state statutes enacted a rule of competency compelled application of the state law. Moreover, the question of whether a federal court sitting in diversity applies state or federal law turns under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), on notions of federalism, not separation of powers. Congress has no more ability through legislation than does the Supreme Court of the United States through rulemaking to prescribe the substantive rules of decision in diversity cases. *See Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965) ("[N]either Congress nor the federal courts can . . . fashion rules which are not supported by a grant of federal authority contained in Article I or some other section of the Constitution; in such areas state law must govern because there can be no other law.").

13

¶22    In contrast to the federal rule, Arizona Rule of Evidence 601 states: "Every person is competent to be a witness except as otherwise provided in these rules or by statute." The Arizona Rule is silent as to the effect of a conflict between a rule and a statute. Thus, even assuming that § 12-2604(A) is a rule of competency, *see* Kenneth S. Broun et al., *McCormick on Evidence* § 69, at 332 (6th ed. 2006) (characterizing the qualification requirements in Federal Rule of Evidence 702 as competency requirements), the question nonetheless remains under Article 3 and Article 6, Section 5(5), whether the statute impermissibly conflicts with Rule 702.

¶23    Our prior cases illustrate the point. For example, Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of Arizona or by applicable statutes or rules." But in *Readenour*, we stated that we "cannot let the legislature define what is relevant." 149 Ariz. at 446, 719 P.2d at 1062. And in *Barsema*, we struck down a statute that effectively modified the relevancy rules notwithstanding the "except as otherwise provided" language of Rule 402. *Barsema*, 156 Ariz. at 314, 751 P.2d at 974. Similarly, Rule 802 provides that hearsay is inadmissible "except as provided by applicable constitutional provisions, statutes, or rules." Nonetheless, in *State v. Robinson*, we struck down a legislative exception to the

14

hearsay rules under the separation of powers doctrine. 153 Ariz. 191, 197-98, 735 P.2d 801, 807-08 (1987).

**III.**

**A.**

¶24        As the court of appeals recognized, a determination that a statute and court rule cannot be harmonized is but the first step in a separation of powers analysis. *Seisinger*, 219 Ariz. at 169 ¶ 20, 195 P.3d at 206.  If there is a conflict, as the court of appeals recognized, *id.*, we must then determine whether the challenged statutory provision is substantive or procedural. *See, e.g., Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 336 ¶ 21, 198 P.3d 1203, 1208 (2009); *Hansen*, 215 Ariz. at 289 ¶ 9, 160 P.3d at 168 ("[W]hen a statute and a rule conflict, we traditionally inquire into whether the matter regulated can be characterized as substantive or procedural, the former being the legislature's prerogative and the latter the province of this Court."); *State v. Fowler*, 156 Ariz. 408, 410-11, 752 P.2d 497, 499-500 (App. 1987).

¶25        The court of appeals concluded that § 12-2604(A) is not substantive because "the legislative history of the enactment of § 12-2604(A) does not establish that the Arizona Legislature had concerns regarding the right to sue, limiting the right to sue or changing the burden of proof to prevail in medical malpractice cases." *Seisinger*, 219 Ariz. at 170 ¶ 21,

15

195 P.3d at 207. Even assuming the factual accuracy of this statement,[2] however, the issue of whether an enactment is procedural or substantive cannot turn on the record made in legislative hearings. The question is instead one of law.

¶26    This legal inquiry, like the determination of whether a rule and a statute conflict, is mandated by fundamental concepts of separation of powers. Article 4, Part 1, Section 1 of the Arizona Constitution vests the legislature (and the people through ballot measure) with the "legislative authority" of the State. The legislature has plenary power to deal with any topic unless otherwise restrained by the Constitution. *Giss v. Jordan*, 82 Ariz. 152, 159, 309 P.2d 779, 783-84 (1957); *Adams v. Bolin*, 74 Ariz. 269, 283, 247 P.2d 617, 626 (1952). Thus, once we determine that a statute conflicting with a court-promulgated rule is "substantive," the statute must prevail. *See Valerie M.*, 219 Ariz. at 336 ¶ 21, 198 P.3d at 1208; *Hansen*, 215 Ariz. at 289 ¶ 10, 160 P.3d at 168 ("[I]if [the conflicting statute] is substantive, it indisputably governs.").

---

[2]    The accuracy of this statement is at least subject to question. A co-sponsor of the bill that contained § 12-2604(A) stated that his goal was "to improve the malpractice climate in our state," encourage physicians to practice here, and lower medical malpractice rates. *Minutes of Meeting: Hearing on S.B. 1036 Before the H. Comm. on Health*, 47th Leg., 1st Reg. Sess. (Ariz. Mar. 23, 2005) (statement of Sen. Robert Cannell).

¶27     Just as the primacy of the courts in promulgating procedural rules does not exclude a supplementary legislative role, our Constitution does not prohibit the judiciary from developing substantive law.  An obvious example of this role is in the area of the common law.  The legislature has expressly provided that the "common law . . . is adopted and shall be the rule of decision in all courts of this state."  A.R.S. § 1-201 (2002).[3]  The American legal tradition relies on courts to make substantive law through the development of the common law.  *See Cronin v. Sheldon*, 195 Ariz. 531, 537, 991 P.2d 231, 237 (1999) ("Courts do make law.  The common law is and has been a product of the courts for hundreds of years.  To adopt the common law is, by definition, to adopt the plenary role of the judiciary in its continuing development.").

¶28     But just as a procedural statute cannot prevail against a procedural rule validly promulgated under Article 6, judge-made substantive law is subordinated to contrary legislative acts validly adopted under Article 4.  Section 1-201 recognizes this basic constitutional principle, adopting the common law only insofar as it is "not repugnant to or inconsistent with the constitution of the United States or the

_____

[3]     The sentiment expressed in § 1-201 was first adopted in 1907 Ariz. Sess. Laws ch. 10, § 8, and has been part of every succeeding Arizona code.

17

constitution or the laws of this state." Thus, when a substantive statute conflicts with the common law, the statute prevails under a separation of powers analysis. *See Pleak v. Entrada Prop. Owners' Ass'n*, 207 Ariz. 418, 422 ¶ 12, 87 P.3d 831, 835 (2004).

### 1.

**¶29** Although the basic constitutional principle of separation of powers is easily stated, the precise dividing line between substance and procedure "has proven elusive." *In re Shane B.*, 198 Ariz. 85, 88 ¶ 9, 7 P.3d 94, 97 (2000). In an oft-quoted passage, this Court stated that

> the substantive law is that part of the law which creates, defines and regulates rights; whereas the adjective, remedial or procedural law is that which prescribes the method of enforcing the right or obtaining redress for its invasion. It is often said the adjective law pertains to and prescribes the practice, method, procedure or legal machinery by which the substantive law is enforced or made effective.

*State v. Birmingham*, 96 Ariz. 109, 110, 392 P.2d 775, 776 (1964). This definition, while unexceptionable, unfortunately does not provide an answer in close cases. Statutes relating to evidence present particularly difficult problems, as such statutes, like rules of evidence, often have both substantive and procedural aspects. *See Readenour*, 149 Ariz. at 446, 719 P.2d at 1062 (noting that § 12-682(2) has "both procedural and substantive aspects"); *cf. Legg*, 286 F.3d at 290 ("[S]ome state

18

evidentiary rules have substantive aspects, thereby defying the substance-procedure distinction.").[4]  The relevant inquiry therefore cannot end, as our concurring colleague suggests, *see* ¶ 52, *infra*, with the conclusion that there is some conflict between a validly enacted rule of evidence and a statute.[5]  The ultimate question is whether the statute enacts, at least in relevant part, law that effectively "creates, defines, and

_____

[4]  The federal courts have also struggled to define the distinction between substance and procedure in developing the *Erie* doctrine.  In arguably the most articulate attempt to resolve this problem, Justice Harlan once wrote that "the proper line of approach in determining whether to apply a state or a federal rule, whether 'substantive' or 'procedural,' is to stay close to basic principles by inquiring if the choice of rule would substantially affect those primary decisions respecting human conduct which our constitutional system leaves to state regulation."  *Hanna*, 380 U.S. at 475 (Harlan, J., concurring) (citing Henry M. Hart, Jr. & Herbert Wechsler, *The Federal Courts and the Federal System* 678 (1953)).  The federal cases interpreting *Erie*, however, provide only limited guidance because they address issues of federalism, not separation of powers between coordinate branches of government.  *See* ¶¶ 20-21, *supra*.

[5]  Arizona Rule of Evidence 407, for example, codifies the common law rule generally making certain remedial measures inadmissible as proof of prior negligence.  The Rule plainly reflects a substantive policy decision — that it is more important to encourage remedy of defects than to allow plaintiffs to use arguably relevant evidence as proof of negligence.  Although we need not today address the issue conclusively, it would seem that the legislature would be free to enact a contrary policy decision, allowing use of such evidence when its probative value is not substantially outweighed by potential prejudice.  *Cf*. *Readenour*, 149 Ariz. at 446, 719 P.2d at 1062 (concluding that statute expanding exclusion of remedial measures beyond that required by Rule 407 had "both procedural and substantive aspects").

regulates rights."

¶30     Even if a litmus test as to what is substantive is not possible, our cases do provide guidance. "Because the legislature is empowered to set burdens of proof as a matter of substantive law, a valid statute specifying the burden of proof prevails over common law or court rules adopting a different standard." *Valerie M.*, 219 Ariz. at 336 ¶ 21, 198 P.3d at 1208; *see State v. Fletcher*, 149 Ariz. 187, 191-93, 717 P.2d 866, 870-72 (1986) (holding that burden of proof of insanity is substantive and may be altered by the legislature). We have also recognized that common law privileges are substantive and generally subject to legislative amendment. *See Readenour*, 149 Ariz. at 446, 719 P.2d at 1062; *State v. Whitaker*, 112 Ariz. 537, 540, 544 P.2d 219, 222 (1975). Similarly, the legislature may modify the elements of common law causes of action, subject to constitutional constraints not at issue in this case. *See Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 314 n.2, 70 P.3d 435, 443 n.2 (2003) (recognizing that legislature may regulate tort elements, subject to constraints imposed by Arizona Constitution article 18, § 6); *cf. McDougall*, 597 N.W.2d at 158-59 (noting legislative ability to modify elements of causes of action).

¶31     Because § 12-2604(A) provides that certain expert testimony cannot be received, Seisinger argues that it must be

20

procedural.  But, as *Readenour* teaches, a statute excluding evidence is not inevitably procedural; privilege statutes exclude highly relevant evidence but are nonetheless substantive.  149 Ariz. at 446, 719 P.2d at 1062.  We thus approach our analysis of § 12-2604(A) with the goal of determining, absent labels, the true function of the statute.[6] We do so mindful of our duty to construe legislation, if possible, so that it does not violate the constitution. *Readenour*, 149 Ariz. at 446, 719 P.2d at 1062.

**2.**

¶32    In medical malpractice actions, as in all negligence actions, the plaintiff must prove the existence of a duty, a

_____

[6]    For the same reason, we are skeptical that the issue can be resolved, as the concurrence suggests, simply by characterizing § 12-2604(A) as usurping a "core judicial function[]."  *See* ¶ 64, *infra*.  The dividing line between "core" functions and others is no more apparent in difficult cases than that between procedural and substantive enactments.  Perhaps more importantly, we have previously stated that Rule 702 does not involve a "core" judicial function.  We noted in *Robinson* that, "[u]nlike the rules affected by statutes at issue in *Seidel* or *Readenour*, the hearsay rules are at the core of the judicial function."  153 Ariz. at 197, 735 P.2d at 801.  *Seidel* involved Rule 702.  *See* 142 Ariz. at 590, 691 P.2d at 681.

Moreover, although the cases involving Federal Rule of Evidence 702 and statutes similar to § 12-2604(A) are distinguishable, *see* ¶¶ 20-22, *supra*, they surely suggest at least that a state legislature does not assume a "core" judicial role in enacting such statutes.  Were such the case, Article III courts would seem constrained by separation of powers principles implicit in the federal constitution to find these statutes unenforceable.

21

breach of that duty, causation, and damages. *Smethers v. Campion*, 210 Ariz. 167, 170 ¶ 12, 108 P.3d 946, 949 (App. 2005). The "yardstick by which a physician's compliance with [his] duty is measured is commonly referred to as the 'standard of care.'" *Id.* ¶ 13.

¶33     Under the common law, breach of duty in malpractice actions required proof that the defendant failed to exercise the "same care in the performing of his duties as was ordinarily possessed and exercised by other physicians of the same class in the community in which he practiced." *Rice v. Tissaw*, 57 Ariz. 230, 237-38, 112 P.2d 866, 869 (1941) (citing *Butler v. Rule*, 29 Ariz. 405, 242 P. 436 (1926)). Arizona courts have long held that the standard of care normally must be established by expert medical testimony. *See, e.g.*, *Riedisser v. Nelson*, 111 Ariz. 542, 544, 534 P.2d 1052, 1054 (1975); *Stallcup v. Coscarart*, 79 Ariz. 42, 46, 282 P.2d 791, 793-94 (1955); *Boyce v. Brown*, 51 Ariz. 416, 421, 77 P.2d 455, 457 (1938).[7] Thus, except when it

_____

[7]     The Arizona cases mirror the general common law rule. *See, e.g.*, *Ewing v. Goode*, 78 F. 442, 444 (C.C.S.D. Ohio 1897) ("[W]hen a case concerns the highly specialized art of treating an eye for cataract, or for the mysterious and dread disease of glaucoma, with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and, where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury."); *McGraw v. Kerr*, 128 P. 870, 874 (Colo. 1912) ("The authorities are practically uniform in holding[,] and counsel

22

was "a matter of common knowledge . . . that the injury would not ordinarily have occurred if due care had been exercised," *Falcher v. Saint Luke's Hosp. Med. Ctr.*, 19 Ariz. App. 247, 250, 506 P.2d 287, 290 (1973), a plaintiff could not meet the burden of production under the common law absent expert testimony.[8] Failure to produce the required expert testimony mandated judgment for the physician-defendant. *See, e.g.*, *Rodriguez v. Jackson*, 118 Ariz. 13, 17, 574 P.2d 481, 485 (App. 1978).

¶34    Arizona courts have also long held that expert testimony on the standard of care can be presented only by a physician. *Rice*, 57 Ariz. at 238, 112 P.2d at 869.  Therefore, a plaintiff producing only the testimony of a nurse or a pharmacologist on the standard of care has not satisfied the substantive burden of proof, and his claim is subject to summary disposition. *See Rudy v. Meshorer*, 146 Ariz. 467, 470, 706 P.2d 1234, 1237 (App. 1985) ("The testimony of a registered nurse cannot be used to establish the standard of care a doctor must meet."); *Rodriguez*, 118 Ariz. at 17, 574 P.2d at 485.

_____

for the plaintiff admits, that as to what is or is not proper practice in examination and treatment, or the usual practice and treatment, is a question for experts, and can be established only by their testimony.").

[8]    Section 12-2604(A) does not purport to abolish the common-law res ipsa loquitur doctrine.  Rather, the statute applies only to those cases in which expert testimony is otherwise required.  *Sanchez v. Old Pueblo Anesthesia, P.C.*, 218 Ariz. 317, 321 ¶ 14, 183 P.2d 1285, 1289 (App. 2008).

23

¶35     Arizona common law decisions requiring expert testimony from physicians in medical malpractice cases long predated the adoption of the Arizona Rules of Evidence in 1977. Thus, as a purely chronological matter, the requirement of a physician expert cannot be said to have resulted from our promulgation of a procedural rule. More importantly, the common law doctrine is far stricter than Rule 702. Our decisions hold that a plaintiff cannot satisfy the burden of production absent an expert physician witness; failure to produce such a witness results in judgment for the defendant. In contrast, Rule 702 does not require that a plaintiff produce expert testimony in any case. Rather, the Rule simply *permits* expert testimony when the finder of fact would thereby be aided. Nor does Rule 702 purport to require that experts on the standard of care be physicians. Rather, the Rule leaves to the trial judge the determination of whether the witness possesses the required "knowledge, skill, experience, training or education."

¶36     Accordingly, even when the Dean of the College of Nursing at the University of Arizona testified that a registered nurse could, under many circumstances, be qualified both by training and experience to know the applicable standard of care, the court of appeals concluded that summary judgment for the defendant was required when there was no testimony from a medical doctor. *Rodriguez*, 118 Ariz. at 16-17, 574 P.2d at 484-

85; *see also id*. (reaching same conclusion as to Ph.D. pharmacologist despite similar testimony from associate dean of medical school); *Rudy*, 146 Ariz. at 470, 706 P.2d at 1237 (affirming summary judgment when the only testimony on standard of care came from registered nurse).

¶37    In short, the requirement of expert physician testimony in a medical malpractice action is not simply the result of Rule 702 or some other procedural rule.  Our decisions requiring expert physician testimony do not turn on a case-by-case examination of the training or qualifications of any individual expert.  Rather, they teach that a plaintiff cannot satisfy the burden of proving a required element of the tort in the absence of a very specific kind of evidence.  To establish the requisite standard of care, Arizona cases do not accept just any kind of expert witness, but rather demand a physician.

¶38    We therefore conclude that the requirement of expert testimony in a medical malpractice action is a substantive component of the common law governing this tort action.  The common law requirement reflected a policy decision by the courts that the plaintiff's substantive burden of production could only be met by a particular kind of evidence.  The common law requirement thus effectively established an element of the cause of action, by specifying the kind of proof necessary to meet the plaintiff's burden of production.

25

¶39    The common law elements of a medical malpractice action have now been partially codified by the legislature in A.R.S. § 12-563. Because § 12-563 defines the elements of a cause of action, it is plainly substantive. Section 12-2604(A) is substantive in much the same sense. It "regulates rights," *Birmingham*, 96 Ariz. at 110, 392 P.2d at 776, by modifying the common law to increase a plaintiff's burden of production with respect to a statutory element of the tort, departure from the standard of care. Before the enactment of § 12-2604(A), Seisinger could satisfy that burden by presenting the testimony of Dr. Aldrete, assuming he qualifies as an expert under Rule 702. After § 12-2604(A) became effective, the same evidence is not sufficient, as a matter of law, to avoid summary judgment. The statute thus did not merely alter court procedures, but rather changed the substantive law as to what a plaintiff must prove in medical malpractice actions. *Cf. Peck v. Tegtmeyer*, 834 F. Supp. 903, 909 (W.D. Va. 1992) ("In other words, under the statutory scheme, the standard of care is that which is testified to by an expert qualified under the statute."), *aff'd mem.*, 4 F.3d 985 (4th Cir. 1993); *Legg*, 286 F.3d at 290 ("State witness competency rules are often intimately intertwined with a state substantive rule. This is especially true with medical malpractice statutes, because expert testimony is usually required to establish the standard of care.").

26

¶**40**      Our conclusion that § 12-2604(A) is substantive insofar as it requires a certain type of evidence to prove an element of the tort does not, as our concurring colleague suggests, "shift[] the established boundaries of judicial and legislative domains."      *See* ¶ 60, *infra*.      The doctrine of separation of powers does not constrain the legislature from modifying, or even abolishing, the elements of common law causes of action.      *See* ¶ 30, *supra*.      Nor do separation-of-powers principles restrict the legislature's ability to increase the plaintiff's common law burden of proof.   *See id.*   If separation of powers would not prevent the legislature from requiring that all medical malpractice plaintiffs prove claims beyond a reasonable doubt, it is difficult to see why the legislature cannot require a heightened level of proof of the standard of care.

¶**41**      Although we maintain plenary power over procedural rules, we do not believe that power precludes the legislature from addressing what it believes to be a serious substantive problem – the effects on public health of increased medical malpractice insurance rates and the reluctance of qualified physicians to practice here — by effectively increasing the plaintiff's burden of production in medical malpractice actions. Given the critical substantive function that our common law decisions have ascribed to expert testimony about the standard

27

of care, § 12-2604(A) is properly viewed as a modification of that substantive common law, not merely as a change in procedure.

**B.**

¶42    We therefore conclude that insofar as § 12-2604(A) specifies the kind of expert testimony necessary to establish medical malpractice, it is substantive in nature and does not offend the separation of powers doctrine.  Section 12-2604(A) was enacted in 2005.  2005 Ariz. Sess. Laws, ch. 183, § 1 (1st Reg. Sess.).  This case was filed in 2004, and concerns conduct occurring in 2002.  Therefore, we must decide whether § 12-2604(A) applies retroactively to actions filed before its effective date.

¶43    "No statute is retroactive unless explicitly declared therein."  A.R.S. § 1-244 (2002).  Section 12-2604 contains no such declaration.  Arizona courts have "engrafted an exception" to this statute under which a statute may nonetheless have "retroactive effect if it is merely procedural."  *In re Shane B.*, 198 Ariz. at 87 ¶ 8, 7 P.3d at 96 (citation and internal quotations omitted).  We have today concluded that § 12-2604(A) is not merely procedural.  The statute therefore does not apply retroactively to Seisinger's claim.

**IV.**

¶44    For the reasons above, we hold that § 12-2604(A) does not violate the constitutional separation of powers doctrine. We therefore vacate the opinion of the court of appeals. This case does not present, and we today express no opinion, as to whether the statute contravenes any other constitutional provision. Because § 12-2604(A) does not apply retroactively, we also vacate the judgment of the superior court and remand for further proceedings consistent with this opinion.

_____
Andrew D. Hurwitz, Justice


CONCURRING:


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
W. Scott Bales, Justice


**E C K E R S T R O M**, Judge, concurring in part and concurring in the result.

¶45    I agree fully with the majority's conclusions, set forth in part II of the foregoing opinion:  (1) that the Arizona

Constitution commands that the legislative, executive, and judicial branches shall be "separate and distinct" and that no branch "shall exercise the powers properly belonging to either of the others," Ariz. Const. art. 3; (2) that the Arizona Constitution has expressly endowed the judiciary with the power to promulgate "rules relative to all procedural matters in any court," *id.* art. 6, § 5(5); (3) that judicial rule-making power generally includes the power to promulgate rules of evidence; and (4) that the statute at issue here, A.R.S. § 12-2604(A), conflicts with Arizona Rule of Evidence 702. I write separately because, in this case, I cannot harmonize those premises with the majority's ultimate holding that § 12-2604(A) is constitutional.

¶46    As Judge Irvine aptly observes in the court of appeals opinion, "the separation of powers doctrine does not require absolute compartmentalization of the branches." *Seisinger v. Siebel*, 219 Ariz. 163, ¶ 7, 195 P.3d 200, 202 (App. 2008). And, as the majority's scholarly opinion here chronicles, our constitution tolerates each department's incursion into the other's presumptive domain only so long as that incursion does not conflict with, "or 'tend[] to engulf,'" the power of the constitutionally sanctioned branch. *State ex rel. Napolitano v. Brown*, 194 Ariz. 340, ¶ 6, 982 P.2d 815, 817 (1999) (quoting *State v. Robinson*, 153 Ariz. 191, 197, 735 P.2d 801, 807

30

(1987)). But when our legislature does enact a statute that conflicts with a procedural rule promulgated by this Court, we must determine which branch possesses the primary power, as set forth in the Arizona Constitution, to address the topic at issue. *State v. Hansen*, 215 Ariz. 287, ¶ 9, 160 P.3d 166, 168 (2007).

¶**47** The Arizona Constitution endows the judicial department with primary authority to create rules governing the standards for the admissibility of evidence in an Arizona state courtroom—at least when, as here, those rules pursue goals at the core of the judicial function. As the majority acknowledges, Article 6, Section 5(5) of the Arizona Constitution expressly vests this Court with the "[p]ower to make rules relative to all procedural matters in any court." And, this Court has repeatedly observed that, because the Arizona Rules of Evidence are generally procedural in nature, this Court's authority to promulgate such rules ordinarily falls within the power granted by that article. *See, e.g.*, *Barsema v. Susong*, 156 Ariz. 309, 314, 751 P.2d 969, 974 (1988); *State v. Robinson*, 153 Ariz. 191, 197, 735 P.2d 801, 807 (1987); *Readenour v. Marion Power Shovel*, 149 Ariz. 442, 444-45, 719

P.2d 1058, 1060-61 (1986); *State ex rel. Collins v. Seidel*, 142

Ariz. 587, 590, 691 P.2d 678, 681 (1984).[9]

¶**48**      But the authority of the judicial department over most

rules of evidence does not derive exclusively from its express

authority to promulgate procedural rules pursuant to Article 6,

Section 5(5), but also from the basic content of the "judicial

power" given to this department by our constitution in Article

6, Section 1.  *See Burney v. Lee*, 59 Ariz. 360, 363-64, 129 P.2d

308, 309-10 (1942) (identifying rule-making authority as

"essentially judicial" in nature and inherent in court's Article

6, Section 1 power).  When addressing the constitutionality of a

statute conflicting with Arizona Rule of Evidence 802, this

Court has observed that the judiciary's constitutional power to

promulgate hearsay rules derives both from "the reach of [the

Court's] rulemaking authority" and the function of those rules

to pursue goals central to the judicial role.  *See Robinson*, 153

_____

[9]    As the majority correctly observes, judge-made substantive
law does not prevail over conflicting legislation merely because
this Court has characterized that law as a rule of evidence.
Specific rules of evidence that fall outside the domain of
plenary judicial power, as articulated by the Arizona
Constitution, are subordinate to conflicting legislation on the
same topic.  *See Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219
Ariz. 331, ¶ 21, 198 P.3d 1203, 1208 (2009).  In the above-
referenced cases, however, this Court has repeatedly
acknowledged that most rules of evidence are fairly
characterized as procedural rather than substantive.

32

Ariz. at 197, 735 P.2d at 807.  In that case, Justice Feldman explained:

> [T]he hearsay rules are at the core of the judicial function:  defining what is reliable evidence and establishing judicial processes to test reliability. Under basic separation of powers principles, these judicial functions are separate and different from legislative powers.  As Professor Wigmore long ago explained, "the judicial power involves the application of the law to concrete facts and, therefore, the investigation and establishment of the facts.  Any statute which prevents the judicial body from ascertaining the [true] facts [in the case before it] . . . is ineffective."

*Id.* (alterations in original) (citation omitted).  In so reasoning, the court also observed that the enhancement of "the truth-finding process" and rules designed to assure the reliability of evidence presented stand at "the heart of the judicial process."  *Id.*

¶49      Under the specific evidentiary rule at issue here, Rule 702, expert testimony is admissible any time it "will assist the trier of fact to understand the evidence or to determine a fact in issue," but only on condition that the witness is "qualified as an expert by knowledge, skill, experience, training, or education."  In this way, Rule 702 both facilitates a party's ability to establish facts relevant to the proceedings and installs a threshold mechanism for ensuring that such testimony is reliable.

33

¶50  The Court's intention to pursue those twin goals in promulgating Rule 702 is also evident in its prefatory note to the section of the rules relating to expert witness testimony:

> The rules in this article are designed to avoid unnecessary restrictions concerning the admissibility of opinion evidence; however, as this note makes clear, an adverse attorney may, by timely objection, invoke the court's power to require that before admission of an opinion there be a showing of the traditional evidentiary prerequisites. Generally, it is not intended that evidence which would have been inadmissible under pre-existing law should now become admissible.

Ariz. R. Evid. art. 7 note.  Thus, in promulgating Rule 702, this Court has sought to pursue goals that are central to the judicial function—to create threshold standards for the reliability of the testimony provided and assure an impartial and rational process for each party to establish facts in a courtroom.  *See also* Ariz. R. Evid. 102 (identifying purpose of Arizona Rules of Evidence as fair and efficient "development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined").[10]  In so doing, the Court

_____

[10]  Arizona courts have yet to elaborate on what pursuits, if any, might be characterized as core functions of the judiciary beyond providing an efficient, reliable, and impartial truth-finding process.  But, to properly carry out the intent expressed by our constitutional text in granting exclusively to this department "[t]he judicial power," Ariz. Const. art. 6, § 1, any such analysis would need to be securely tethered to traditional notions of that power as reflected in conventional understandings of institutional competence and judicial domain. The majority may well be correct that articulating the precise

has exercised the judicial powers expressly conferred on this department by both Sections 1 and 5(5) of Article 6 of the Arizona Constitution.

¶51      For this reason, I must part ways with the majority's analytical approach and ultimate conclusion.  If Rule 702 is indeed an exercise of constitutionally endowed judicial power, as authorized by both general and specific provisions of the Arizona Constitution found in Article 6, it follows that a statute addressing the same subject must constitute an improper

_____

boundaries of the power bestowed by Article 6, Section 1 will be difficult and may provide no greater analytical clarity than the substantive/procedural framework suggested by the language of Article 6, Section 5(5).  But we cannot avoid considering the language of Article 6, Section 1 merely because enforcing that language might be analytically complex.  And we do no service to the legislative branch by overlooking that language.  Indeed, not all provisions of our rules of evidence would necessarily advance a core judicial function and be protected from incursion by the legislature.  For example, traditional notions of the judicial power would not support characterizing Arizona Rule of Evidence 407 as an exercise of this Court's plenary authority. This is not because, as the majority suggests, the promulgation of Rule 407 "reflects a substantive policy decision." *See* n.5, *supra.*  All rules of evidence, even patently procedural ones, reflect some form of policy decision—most often related, as evidenced by the stated purpose of the rules, to providing an efficient, reliable, and impartial truth-finding process. Rather, Rule 407 falls outside of the primary domain of this department because it addresses a concern (regarding subsequent remedial measures) unrelated to core functions of the judiciary. Put another way, it is indisputably a core function of the judicial branch to create an impartial and efficient process for presenting reliable evidence in a courtroom.  It is not a core judicial function to encourage property owners and manufacturers to remedy dangerous conditions.

35

exercise of legislative authority to the extent the statute conflicts with the rule.  Put more succinctly, if the power to determine the threshold for admissibility of expert testimony, as set forth in Rule 702, properly belongs to the judicial department, it cannot simultaneously belong to the legislature. *See* Ariz. Const. art. 3 (dividing powers of government into legislative, executive, and judicial departments and requiring "such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others").

¶52      The majority does not directly dispute this fact, *see* ¶¶ 8-9, *supra*, but nonetheless performs a supplementary analysis of whether the requirements set forth in § 12-2604(A) may be characterized as "substantive or procedural."  *See* ¶ 24, *supra*. In light of the clear answers provided by the text of the Arizona Constitution when applied to Rule 702, I question the necessity of engaging in that further analysis.

¶53      As discussed, this Court has repeatedly addressed the constitutionality of statutes in purported conflict with specific provisions of the Arizona Rules of Evidence.  In each of those cases, the Court has simply assumed, with brief reference to the authority provided in Article 6, Section 5(5), that the pertinent evidentiary rule fell squarely within the judicial domain and that the statute would be unconstitutional

to the extent it conflicted with the rule. *See Barsema*, 156 Ariz. at 314, 751 P.2d at 974; *Robinson*, 153 Ariz. at 196-97, 735 P.2d at 806-07; *Readenour*, 149 Ariz. at 444-45, 719 P.2d at 1060-61; *Seidel*, 142 Ariz. at 590-91, 691 P.2d at 681-82. None of those cases engaged in a supplementary and dispositive analysis to confirm whether the statute's content also could be characterized as procedural. Only in *Readenour* did this Court even mention the substantive/procedural dichotomy—noting that the statute there had substantive and procedural features—and it did so only in the context of explaining why the statute harmonized rather than conflicted with the rule of evidence in question there. 149 Ariz. at 446, 719 P.2d at 1062.

¶**54**      Thus, in apparent recognition of the fact that a power cannot simultaneously belong to both branches, this Court has declined to apply the procedural/substantive analysis to a statute when such analysis is not necessary to resolve the separation of powers question before it. Rather, it has answered that question by determining whether the Court's rule of evidence falls within its grant of exclusive constitutional authority and, if so, whether the statute conflicts with the rule.[11]

_____
[11]    In recognizing the logic of this approach, I do not suggest that the separation of powers inquiry ends upon the discovery of "some conflict between a validly enacted rule of evidence and a

37

¶55     The wisdom of this approach is aptly demonstrated by the ease with which a statute setting forth an evidentiary rule may be characterized as both substantive and procedural—and the difficulty of determining which aspect controls. As the majority observes and as this Court has previously acknowledged, statutes relating to the admissibility of evidence "often have both substantive and procedural aspects." *See* ¶ 29, *supra*. Presumably, then, we can only assess the fundamental nature of a statute on this continuum by first identifying its respective substantive and procedural features and then determining which of those features are most relevant to the criteria constitutionally provided for resolving separation of powers problems.

¶56     Although the majority opinion cogently highlights what it characterizes as the substantive aspects of § 12-2604(A), *see* ¶ 39, *supra*, it fails to identify or analyze the manifest procedural features of that statute. To the extent our jurisprudence has provided a yardstick for distinguishing

_____

statute." *See* ¶ 29, *supra*. Rather, once an evidentiary rule has been determined to be an exercise of this Court's plenary authority as set forth by the various provisions of Article 6 of the Arizona Constitution, then it follows that any conflicting provision in a statute is unconstitutional. As the majority correctly observes, a rule can be validly promulgated but subordinate to any conflicting legislation if its promulgation does not fall within the powers granted to the judicial branch in Article 6. *See* ¶ 27, *supra*.

between substantive and procedural law, it has observed that substantive law "creates, defines and regulates rights," while procedural law "prescribes the method of enforcing the right or obtaining redress for its invasion." *State v. Birmingham*, 96 Ariz. 109, 110, 392 P.2d 775, 776 (1964). Under that definition, procedural law "pertains to . . . the practice, method, procedure or legal machinery by which the substantive law is enforced or made effective." *Id.*

¶57     The majority declines to assess the procedural features of § 12-2604(A) under the *Birmingham* test. But, in my view, such an exercise provides considerable clarity in assessing the essential nature of the statute. As a threshold matter, § 12-2604(A) prescribes an evidentiary rule relating to "an action alleging medical malpractice." And there is no dispute that the elements of that cause of action, because they define the right to seek redress, are substantive law. But § 12-2604(A) does not create the right to sue when the elements of that cause of action are met, nor does it specify what those essential elements are: Those are set forth in part in A.R.S. § 12-563. Rather, § 12-2604(A) itemizes the qualifications an expert witness must possess to present testimony on the standard of care element found in § 12-563(1).

¶58     Thus, while § 12-563 sets forth substantive law by specifying *what* must be proven, § 12-2604(A) prescribes *the*

*method* by which litigants must prove their entitlement to relief under that substantive law. Under the traditional test articulated in *Birmingham*, laws that provide "the method" for asserting a specific substantive right are procedural in nature.[12] 96 Ariz. at 110, 392 P.2d at 776.

¶59    The procedural aspect of § 12-2604(A) is highlighted not only by our traditional approach to characterizing a statute, but also by the function it performs in the context of our evidentiary law. Neither the majority opinion nor any of the litigants dispute that Rule 702 is procedural or that its promulgation falls for that reason within the express delegation of authority to the judiciary found in Article 6, Section 5(5). To the extent the provisions of § 12-2604(A) conflict with Rule 702, as the majority opinion correctly concludes they do, those

_____
[12]    The majority asks why the legislature may not "require a heightened level of proof of the standard of care," if the legislature maintains the power to set forth the burden of proof in the first instance. *See* ¶ 40, *supra.* But there remains an analytical distinction under the *Birmingham* test between a statute setting forth the quantum of proof necessary to support a cause of action and a statute specifying what potential witnesses may be used in doing so. Indeed, § 12-2604(A) does not so much purport to address the *level* of proof as the *form* that proof must take. For example, an experienced but recently retired physician with all of the same academic qualifications and practical experience as the defendant physician might well be able to provide a very high level of proof for the plaintiff on the question of the standard of care but would still be disqualified from doing so by § 12-2604(A)(2)(a) and (3)(a), which prohibit expert testimony if the witness no longer maintains "active clinical practice."

40

features of the statute must necessarily be procedural. And, regardless of whether one ultimately concludes that the rule and statute conflict, both specify preconditions for the presentation of expert testimony in a court of law. Because both perform essentially the same function, it makes little sense to characterize one provision as procedural and the other as substantive.[13]

¶60 At a minimum, then, the procedural features of § 12-2604(A) are prominent. At the same time, the arguments for characterizing the statute as substantive law are, in my estimation, less persuasive. In essence, the majority posits that elevated standards for the admission of expert testimony in medical malpractice cases effectively establish an element of the cause of action, "by specifying the kind of proof necessary to meet the plaintiff's burden of production." *See* ¶ 38, *supra*. But there are few, if any, rules of evidence that do not similarly qualify the method by which claimants must meet their burdens of production. Indeed, this is the function of those rules. For example, the hearsay rules play this role in every

---

[13] Although § 12-2604(A) addresses a particular element of a particular cause of action—while Rule 702 applies broadly to all causes of action—it makes little sense to conclude that the legislature may constitutionally do in small increments what it may not do in large ones. Certainly, no text in the Arizona Constitution suggests such a basis for distinguishing legislative and judicial domains.

case—rendering a certain type of information unavailable to claimants to support the elements of their claim. Indeed, if the Court were to apply this analytical approach in every case addressing a conflict between a statute and a rule of evidence, the statute must always prevail—and the legislature, not the judicial department, would possess hegemony over all evidentiary rules. Because such a shift of power stands in direct conflict to the grant of authority to the judicial department found in the text of the Arizona Constitution, I fear the majority's approach is incorrect and risks shifting the established boundaries of judicial and legislative domains.

¶61 Although the majority's characterization of § 12-2604(A) as a constructive element of a medical malpractice cause of action proves too much, I believe its second argument in support of characterizing the statute as substantive, proves too little. The majority observes correctly that this Court has addressed standards for the admissibility of testimony on the standard of care in medical malpractice cases, both before and after it promulgated Rule 702. *See* ¶¶ 33-37, *supra*. And our jurisprudence, like § 12-2604(A), has set threshold evidentiary standards for the admissibility of such expert testimony higher than those required by Rule 702. *See* ¶¶ 33-37, *supra*. The majority then suggests that, because that jurisprudence has evolved apart from the Arizona Rules of Evidence, it is

presumptively substantive law, subject to legislative override. *See id.*

¶62    However, as discussed, our constitutional text expressly empowers the judicial department to "make rules relative to all procedural matters." Ariz. Const. art. 6, § 5(5). But it does not specify the method by which those rules may be generated, developed, or promulgated. Indeed, as the majority opinion acknowledges, this Court did not codify any rules of evidence until 1977. *See* ¶ 35, *supra*. Thus, rules of procedure do not become substantive law merely because they have been articulated, explained, qualified, or amplified in case law rather than in the text of a codified set of rules. Otherwise, this Court would risk abdicating its express constitutional rule-making authority every time it construes a question of evidentiary, civil, juvenile, or criminal procedure in a decision, a result our constitution simply does not contemplate.

¶63    In sum, the power to promulgate Rule 702 falls squarely within the power allotted the judiciary by the general and specific terms of Article 6 of the Arizona Constitution. Because § 12-2604(A) conflicts with it, I would find that statute to be an unconstitutional encroachment by the legislature on the powers of this branch.

¶64    In so concluding, I am cognizant that the judiciary must foster comity between the respective branches and that, in

possessing the trust and responsibility to resolve disputes among the branches including our own, we must be careful not to develop self-serving and self-empowering approaches in analyzing such questions. But we must also enforce the provisions of our constitution that expressly grant the judiciary the primary authority over those procedural rules that serve core judicial functions. Because I fear the majority analysis fashions a wholly new framework for addressing separation of powers conflicts between statutes and evidentiary rules, and, in so doing, shifts to the legislature power that constitutionally belongs to this department, I can concur only in the result.

_____
Peter J. Eckerstrom, Judge[*]

_____
[*]    Chief Justice Ruth V. McGregor has recused herself from this case. Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Peter J. Eckerstrom, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.