IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

SEAN and JODIE COLEMAN, husband and wife; individually and on
behalf of their minor child, LANE COLEMAN, *Plaintiffs/Appellants*,

*v.*

JOHN BROCK AMON, M.D. and JEAN MARIE AMON, husband and
wife, *Defendants/Appellees*.

No. 1 CA-CV 19-0350
FILED 8-17-2021

Appeal from the Superior Court in Yuma County
No. S1400CV201501110
The Honorable Lawrence C. Kenworthy, Judge

**AFFIRMED**

COUNSEL

Ahwatukee Legal Office PC, Phoenix
By David L. Abney
*Co-Counsel for Plaintiffs/Appellants*

Law Office of Raymond J. Slomski PC, Phoenix
By R.J. Bucky Slomski
*Co-Counsel for Plaintiffs/Appellants*

Jones Skelton & Hochuli PLC, Phoenix
By Eileen Dennis Gilbride
*Co-Counsel for Defendants/Appellees*

Holden & Armer PC, Phoenix
By Scott A. Holden, Michael J. Ryan, Nathan S. Ryan
*Co-Counsel for Defendants/Appellees*

## OPINION

Presiding Judge Michael J. Brown delivered the opinion of the Court, in which Judge Jennifer B. Campbell and Judge D. Steven Williams joined.

B R O W N, Judge:

¶1        In this medical malpractice action, plaintiffs Sean and Jodie Coleman appeal the superior court's judgment entered following a jury verdict in favor of defendant Dr. John Amon.[1]  The Colemans challenge (1) the constitutionality of A.R.S. § 12-2605, which generally bars a healthcare provider's apologetic statements as evidence of liability or an admission against interest in a civil action; and (2) several evidentiary rulings.  We conclude § 12-2605 does not violate the Arizona Constitution's provisions relating to separation of powers, special laws, or privileges and immunities, and the court did not commit reversible error in addressing the evidentiary matters.

## BACKGROUND

¶2        Jodie was pregnant with twin boys; Dr. Amon was her obstetrician.  Because Jodie was considered a high-risk patient, Dr. Amon and the Colemans repeatedly discussed that a cesarean section ("C-section") would be scheduled, but a date had not been set when Jodie went into labor sooner than anticipated.  After the Colemans arrived at the hospital, staff began fetal monitoring.  Dr. Amon was scheduled to perform a C-section on another patient that morning, so Dr. William Brown, the on-call doctor, stepped in to handle the delivery.  Dr. Amon anticipated Dr. Brown would perform a C-section, but Dr. Brown confidently told Jodie he wanted to do a vaginal delivery because it was the safest way.  Though Jodie was initially nervous, she agreed with Dr. Brown's recommendation.

¶3        After the first twin was born without complications, the second twin ("the baby") became entrapped in the birth canal.  A nurse summoned Dr. Amon for assistance, but by the time the baby was finally delivered, he had been deprived of oxygen for at least six minutes and had

---

[1]        According to the complaint, Dr. Amon's wife, Jean Marie, is also a party to the lawsuit because she financially benefits from her husband's professional earnings.

no heartbeat for about 15 minutes after birth. The baby was revived but suffered brain damage.

¶4        The Colemans sued Dr. Amon, Dr. Brown, the hospital, and others, alleging they negligently caused the baby to suffer severe and permanent injuries. After extensive pretrial litigation, Dr. Amon was the only remaining defendant in the 15-day trial. The jury returned a defense verdict, and the superior court denied the Colemans' post-trial motions. This timely appeal followed.

## DISCUSSION

¶5        We review the superior court's rulings on the admissibility of evidence for an abuse of discretion, *Spooner v. City of Phoenix*, 246 Ariz. 119, 122, ¶ 5 (App. 2018), and will not reverse unless the court incorrectly applied the law, resulting in unfair prejudice, *Larsen v. Decker*, 196 Ariz. 239, 241, ¶ 6 (App. 2000); *see also Creach v. Angulo*, 189 Ariz. 212, 214 (1997). We review de novo the interpretation and constitutionality of statutes. *See Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017); *Gallardo v. State*, 236 Ariz. 84, 87, ¶ 8 (2014). We apply a statute's text as written, *Stambaugh*, 242 Ariz. at 509, ¶ 7, and do not employ secondary construction principles unless the language is open to multiple reasonable interpretations, *Glazer v. State*, 244 Ariz. 612, 614, ¶ 12 (2018).

### A.        Application and Scope of A.R.S. § 12-2605

¶6        In her deposition, Jodie testified that when Dr. Amon first visited her after the delivery, he told her he was sorry. Jodie said that during his next visit, Dr. Amon told her "how sorry he was, and that he felt like he had let [the Colemans] down." Jodi also explained that during a different conversation, Sean asked Dr. Amon, "If we would have stayed with the C-section, would this have happened?" According to Jodi, "Dr. Amon put his head down and he said 'No.'"

¶7        Dr. Amon recalled these conversations differently. In his deposition, he denied telling Jodi he was sorry or had let the Colemans down. Instead, he said that "[t]he discussion that we had is we -- and we mentioned this -- is when Sean mentioned if this could have been avoided with a [C-]section. And then we went forward in talking about how it's hard to kind of discuss that." When asked again if he told Jodie he felt like he had let her down, Dr. Amon replied, "I don't recall."

¶8        Before trial, Dr. Amon filed a motion in limine to preclude any testimony that he had said he was sorry or had let the Colemans down, as

Jodi had testified in her deposition. Dr. Amon disputed that such a conversation occurred, but maintained that even if it did, the apology was inadmissible under A.R.S. § 12-2605, which was adopted in 2005 and provides as follows:

> Any statement, affirmation, gesture or conduct expressing apology, responsibility, liability, sympathy, commiseration, condolence, compassion or a general sense of benevolence that was made by a health care provider or an employee of a health care provider to the patient, a relative of the patient, the patient's survivors or a health care decision maker for the patient and that relates to the discomfort, pain, suffering, injury or death of the patient as the result of the unanticipated outcome of medical care *is inadmissible as evidence of an admission of liability or as evidence of an admission against interest*.

(Emphasis added.)[2] Dr. Amon argued his apology "clearly fits within the wide umbrella of this statute." In their response, the Colemans countered that § 12-2605 violates several provisions of the Arizona Constitution but even assuming its validity, the statute must be strictly construed. As such, the Colemans asserted that a "statement regarding an apology or remorse may still be admissible for another purpose," including impeachment. Specifically, they argued:

> Dr. Amon's statements that he was sorry, and that he let the Colemans down, are admissible to impeach and rebut his conflicting arguments. Dr. Amon's position is that 'he met the standard of care in all aspects of his involvement in [Jodie]'s care,' and that 'nothing he did or did not do caused any injury to [Jodie] or [the baby], or otherwise caused or contributed to [the Colemans'] alleged damages as claimed in this lawsuit.'. . . Moreover, Dr. Amon denies that he told Jodie that he was sorry and felt like he let her down . . . . Thus, his statements that he was sorry, and that he let the Colemans down, are admissible to impeach his testimony and rebut his arguments.

¶9 Following a brief exchange with the parties at the final pretrial conference, the court granted Dr. Amon's motion in limine, reasoning in

---

2 Similar laws have been adopted in at least 39 states. *See* Benjamin J. McMichael, et al., *"Sorry" Is Never Enough: How State Apology Laws Fail to Reduce Medical Malpractice Liability Risk*, 71 Stan. L. Rev. 341, 346, 395–98 (2019).

part that "just based on the statute, it looks like it has to be granted, but that's not to foreclose the possibility of something happening[,] some other evidence that comes in where the [c]ourt finds that there's been a door opened."  After further discussion concerning the scope of the ruling, the Colemans questioned whether the motion was meant to exclude the entire conversation between Jodie and Dr. Amon.  They also expressed concern about the possibility of Jodie inadvertently referring to the apology-related statements at trial.  The Colemans then referred to the separate conversation between Sean and Dr. Amon—whether the outcome would have been different if a C-section had been performed—prompting the court to ask, "why would that not come in[?]"  Dr. Amon clarified that the conversation with Sean was not part of the motion, and that conversation was not mentioned further.  The court concluded that the apology referenced in the motion was precluded, but added:  "I cannot basically say the door would never be opened.  I don't know.  I'm saying the door is very unlikely to be opened because the way the statute is."  The court did not otherwise address whether the apology evidence could be used to impeach Dr. Amon, nor did the court offer any reasoning for rejecting the Colemans' arguments that the statute is unconstitutional.

¶10        The Colemans do not argue the court erred in finding that § 12-2605 precluded them from using Dr. Amon's apologetic statements as admissions of liability or against his interest.  Instead, they renew their argument that § 12-2605 violates three provisions of the Arizona Constitution, and alternatively assert that such statements were admissible for impeachment purposes.

### B.        Separation of Powers

¶11        The Colemans argue § 12-2605 is unconstitutional because it impermissibly constrains the judiciary's authority to make procedural rules of evidence.  The Arizona Constitution mandates that the legislative, executive, and judicial departments "shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."  Ariz. Const. art. III.  It also delegates to our supreme court the "[p]ower to make rules relative to *all procedural matters* in any court." Ariz. Const. art. VI, § 5(5) (emphasis added).  Although the legislature may enact statutes addressing procedural matters that supplement the courts' evidentiary rules, "in the event of irreconcilable conflict between a procedural statute and a rule, the rule prevails." *Seisinger v. Siebel*, 220 Ariz. 85, 89, ¶ 8 (2009).  We must therefore first decide if § 12-2605 conflicts with our supreme court's rules of evidence.  *See id.* at 90, ¶ 19; *see also Duff v. Lee*, 250 Ariz. 135, 138, ¶ 12 (2020).

**¶12** But for § 12-2605, Dr. Amon's apology-related statements may have been admissible to prove liability as an opposing party's statement under Arizona Rule of Evidence ("Rule") 801(d)(2), subject to Rules 401 (relevancy) and 403 (probative value outweighed by danger of unfair prejudice or other issues). Although Dr. Amon argues § 12-2605 and Rule 801(d)(2) do not conflict because Rule 801 does not *mandate* admission of the statements and the statements must still pass muster under Rules 401 and 403, § 12-2605 foreclosed the Colemans' opportunity to attempt to meet those rules' standards in the first place. Thus, § 12-2605 irreconcilably conflicts with Rule 801(d)(2).

**¶13** A statute that cannot be harmonized with a court rule does not violate separation of powers, however, if the statute is substantive rather than procedural. *Seisinger*, 220 Ariz. at 91, ¶ 24. A statute that excludes evidence is not necessarily procedural. *Id*. at 93, ¶ 31. Instead, in deciding whether it is substantive, "[t]he ultimate question is whether the statute enacts, at least in relevant part, law that effectively 'creates, defines, and regulates rights.'" *Id*. at 93, ¶ 29 (citation omitted). Though "we cannot let the legislature define what is relevant[,] . . . we may defer to legislative decisions regarding the use or exclusion of relevant evidence to promote substantive goals of public policy." *Readenour v. Marion Power Shovel, a Div. of Dresser Indus., Inc.*, 149 Ariz. 442, 446 (1986). For example, "privilege statutes exclude highly relevant evidence but are nonetheless substantive," *Seisinger*, 220 Ariz. at 93, ¶ 31, because they "further policy goals such as physician-patient confidentiality," *Readenour*, 149 Ariz. at 446.

**¶14** Like a privilege statute, although § 12-2605 excludes potentially relevant evidence for certain purposes, it furthers the legislature's policy goal of encouraging healthcare providers to speak with patients freely and with compassion about adverse or unforeseen medical outcomes without fear their words might later be used against them in litigation. *See, e.g.*, *In re Med. Rev. Panel of Gerard Lindquist*, 274 So. 3d 750, 761, n.12 (La. Ct. App. 2019) (similar apology law enacted "to encourage such disclosures and protect doctors from possible adverse legal consequences that may arise from them"); Flauren Fagadau Bender, *"I'm Sorry" Laws and Medical Liability*, 9 Am. Med. Assoc. J. Ethics 300, 302 (2007) (explaining that "by encouraging honest, open communication, 'I'm sorry' laws facilitate the continuation of the patient-physician relationship following an adverse event" and that "[a]n upfront apology or expression of sympathy can relieve anger and frustration"); Michal Alberstein & Nadav Davidovitch, *Apologies in the Healthcare System: From Clinical Medicine to Public Health*, 74 L. & Contemp. Probs. 151, 155 (2011) (noting apology laws "aim[] to encourage doctors and healthcare providers to

develop more sincere human interaction with their patients without fear of sanction by law for such efforts" and "may provide a safe area where sincere human gestures will not have legal consequences").

**¶15**      Rather than "defin[ing] what [evidence] is relevant," *Readenour*, 149 Ariz. at 446, § 12-2605 aims to foster an open and candid provider-patient relationship—an objective that is properly within the legislature's prerogative, *see Seisinger*, 220 Ariz. at 89, ¶ 12; Ariz. Const. art. IV, pt. 1, § 1(1) ("The legislative authority of the State shall be vested in the legislature."). Accordingly, § 12-2605 represents a valid exercise of legislative authority and does not infringe on constitutional separation of powers.

### C.    Special Laws

**¶16**      The Colemans next argue § 12-2605 is an unconstitutional special law. The Arizona Constitution mandates that "[n]o . . . special laws shall be enacted" that "[c]hang[e] the rules of evidence" or "[g]rant[] to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises," or "[w]hen a general law can be made applicable." Ariz. Const. art. IV, pt. 2, § 19(3), (13), (20). As our supreme court has explained, a statute is not a prohibited special law if (1) it has a rational relationship to a valid legislative purpose; (2) it has a legitimate classification, encompassing all similarly situated members; and (3) the classification is elastic so as to allow other individuals or entities to enter and exit the class. *Gallardo*, 236 Ariz. at 88, ¶ 11.

**¶17**      First, as explained above, *supra* ¶ 14, § 12-2605 serves a legitimate government interest of encouraging healthcare providers to be more candid and empathetic with patients, and the statute is rationally related to that objective because providers can make apology-related statements without concern that such statements will be used against them in a future lawsuit. *See Gallardo*, 236 Ariz. at 88, ¶ 11.

**¶18**      Second, § 12-2605's class of "health care provider[s]" is legitimate and encompasses all similarly situated members because all persons or entities that meet the statutory definition in A.R.S. § 12-561 fall within the class. *See* A.R.S. § 12-561(1) (defining "[l]icensed health care provider" as "a person, corporation or institution licensed or certified by the state to provide health care, medical services, nursing services or other health-related services," or a qualifying blood or plasma facility, and their "officers, employees, and agents"); *see also Governale v. Lieberman*, 226 Ariz. 443, 449, ¶ 21 (App. 2011) (upholding A.R.S. § 12-2604 against special-law challenge because it "applies uniformly to all members of the classes of

health care providers and to persons suing them"). Although the Colemans argue the class is unconstitutional because it does not include *all* would-be tortfeasors, that a classification could conceivably be broader or benefit more people does not render it illegitimate. *See Gallardo*, 236 Ariz. at 90–91, ¶ 26 (legislature "not constrained from enacting class-based legislation merely because non-members of the class would also derive some benefit from the legislation") (quotation and citation omitted).

**¶19**        Third, § 12-2605's class is elastic because it allows providers to enter the class once they have the required characteristics, and to exit once they lose one of those characteristics. *Id*. at 91, ¶ 27; *see also Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 390, ¶ 51 (2013) (class elastic when "identities of parties . . . change over time"). Thus, § 12-2605 is not an unconstitutional special law.

### D.        Privileges and Immunities Clause

**¶20**        The Colemans next argue § 12-2605 violates Arizona's privileges and immunities clause, which prohibits laws "granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations." Ariz. Const. art. II, § 13. To satisfy this clause, a statute that does not violate a fundamental right or create an invidious classification need only "rationally further[] a legitimate legislative purpose." *Tahtinen v. Superior Court*, 130 Ariz. 513, 515 (1981).

**¶21**        Though the Colemans argue § 12-2605 denies an equal opportunity to other civil-action defendants by protecting only healthcare workers, as explained above, the class of healthcare providers to which the statute applies is legitimate and its members are similarly situated, *supra* ¶ 18, and § 12-2605 satisfies rational basis review, *supra* ¶ 17. Further, the Colemans have not developed any argument that § 12-2605 violates a fundamental right or creates an invidious classification. *State v. Johnson*, 247 Ariz. 166, 180, ¶ 13 (2019) (undeveloped argument may preclude appellate review). The statute does not violate the privileges and immunities clause.

### E.        Use of the Apology Evidence to Impeach Dr. Amon

**¶22**        The Colemans argue that even if § 12-2605 is constitutional, the statute allows a court to admit evidence of apology-related statements for impeachment. In turn, the Colemans assert the superior court improperly kept jurors from hearing about Dr. Amon's apology. According to the Colemans, resolution of that issue requires us to (1) strictly construe § 12-2605 because it operates in derogation of the common law and grants

a privilege, and (2) recognize that a party has the right to broadly challenge a witness's credibility.

**¶23**       We acknowledge these principles, but they must be applied in context. Here, they have little to do with our obligation to apply § 12-2605 as written, which only precludes apologetic statements offered as "an admission of liability or . . . admission against interest."[3]  A.R.S. § 12-2605. The statute thus necessarily allows apology evidence offered for other purposes. *See City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 211, ¶¶ 13–14 (2019) (applying *expressio unius est exclusio alterius* canon, which means "expression of one item implies the exclusion of others"). If the legislature desired to bar apology-related statements in every circumstance, we presume it would have said so. Instead, it identified two specific instances when such statements are not admissible. Because § 12-2605 plainly applies to Dr. Amon's apology, the Colemans could not present evidence of the apology at trial as an admission of liability or admission against interest. The unresolved issue here, however, is whether the Colemans sufficiently preserved their argument that the superior court erred by barring them from using the apology as evidence for purposes not covered by the statute.

**¶24**       The Colemans argue the court improperly precluded them from impeaching Dr. Amon with his apology (1) to rebut his later claim that he met the standard of care, especially in light of the fact he testified as one of his own expert witnesses; and (2) to show he denied making the apology. As far as we can tell, however, the Colemans did not offer the statements for those purposes during the trial. Instead, the only record the Colemans made on this issue is their response to the motion in limine and the related comments made by counsel at the final pretrial conference. Thus, we must decide whether they did enough to preserve these issues for appellate review. *See State v. Kinney*, 225 Ariz. 550, 554, ¶ 7 (App. 2010) ("To preserve an argument for review, [a party] must make a sufficient argument to allow a trial court to rule on the issue.").

---

[3]       It is unclear why the legislature used the phrase "admission against interest," which has been described as "an invitation to confuse two separate theories of admitting hearsay and erroneously engraft an against-interest requirement on admissions." *Nature and Effect*, 2 *McCormick on Evidence* § 254, Westlaw (8th ed., database updated Jan. 2020). It seems plain to us, however, that the legislature intended to preclude what has been commonly referred to as "admissions by a party opponent," a category of non-hearsay now referred to as "An Opposing Party's Statement" in Rule 801(d)(2).

¶25         "[A] party may claim error in a ruling to . . . exclude evidence only if the error affects a substantial right of the party and . . . a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context."  Rule 103(a)(2).  An offer of proof permits "the trial judge to reevaluate [a] decision in light of the actual evidence to be offered, and to permit the reviewing court to determine if the exclusion affected the substantial rights of the party offering it."  *State v. Hernandez*, 232 Ariz. 313, 322, ¶ 42 (2013) (citation and alteration omitted).  Unless the court's ruling is definitive, a party cannot ignore its ongoing obligation to make an offer of proof.  *See* Rule 103(b) ("Once the court rules *definitively* on the record--either before or at trial--a party need not renew an objection or offer of proof to preserve a claim of error for appeal.") (emphasis added).

¶26         In their response to the motion in limine, the Colemans focused on Dr. Amon's testimony denying that he made an apology.  But Amon's denial occurred during his deposition, and the Colemans never explained how they expected to impeach him at trial on that point.  At the final pretrial conference, the court questioned counsel about how Dr. Amon's statements might be introduced for purposes not barred by § 12-2605, and the court left the door open for that possibility, but the Colemans never raised the issue again.  Indeed, at trial the subject of an apology never came up and Dr. Amon never denied apologizing.  To the extent the door may have been opened for using certain statements to impeach Dr. Amon, such as when he testified as an expert witness that he met the standard of care or that he went to Jodie's room after the delivery "just to make sure she was doing okay," the Colemans do not identify any point during the trial where they asked the court to permit them to do so.  Nor did the Colemans attempt to impeach Dr. Amon with his alleged statement to Sean, even though it was not part of the motion in limine.

¶27         In sum, the court's ruling did not foreclose the possibility of introducing impeachment evidence relating to the apology.  But the Colemans had to bring the matter to the court's attention if they believed Dr. Amon had opened the door to such evidence.  *See* Ariz R. Civ. P. 46 (to preserve a claim of error, a party communicates "the action that it wants the court to take or that it objects to, along with the grounds for the request or objection"); *see also State v. Towery*, 186 Ariz. 168, 179 (1996) ("When an objection to the introduction of evidence has been sustained, an offer of proof showing the evidence's relevance and admissibility is ordinarily required to assert error on appeal."); Rule 103(a)(2).  Because the Colemans did not make an offer of proof alerting the court how and when they wished to impeach Dr. Amon with his apology-related statements, the court had no opportunity to evaluate whether § 12-2605 would prohibit their use of the

evidence, and whether it was otherwise admissible under Rules 401 and 403.  Thus, the court did not abuse its discretion.

### F.      Other Impeachment of Dr. Amon

¶28      Unrelated to § 12-2605, the Colemans argue the superior court erred by preventing them from using Dr. Amon's inconsistent deposition testimony to rebut his trial testimony that he knew the baby had no heart rate for the last six minutes before he was delivered.  But the Colemans did in fact impeach Dr. Amon on that subject and argued extensively about the inconsistency during closing arguments.  For example, when the Colemans questioned Dr. Amon, he testified he knew the baby had no heart rate when he palpated the cord.   He then acknowledged he had testified at his deposition that when he arrived to assist with the delivery, he did not know if the cord pulse was the baby's or Jodie's, but Dr. Amon admitted at trial he should have known such information at his deposition.  Because the Colemans were able to challenge him with his inconsistent statements relating to the baby's heart rate, no abuse of discretion occurred.

### G.      Impeachment of Dr. Elliott

¶29      The Colemans also contend the superior court erred in barring them from impeaching Dr. Amon's standard-of-care expert, Dr. Elliott, with alleged inconsistent statements.[4]  Before trial, Dr. Amon filed a motion in limine to preclude the Colemans from presenting evidence suggesting the defendants, their attorneys, and their expert witnesses had conspired to hide details surrounding the birth.  The court granted the motion in part, concluding the Colemans could not introduce testimony or other evidence suggesting the defense conspired to hide anesthesia records, which included a heart monitor strip, because the possible prejudice outweighed any probative value.   The court later clarified that the Colemans could not reference the heart monitor strip for the purpose of suggesting a cover-up.

¶30      Dr. Amon's disclosure statement had indicated Dr. Elliott would testify that the heart rate on the heart monitor strip was the baby's heart rate, not Jodie's.  At trial, however, Dr. Elliott testified he did not think the documented heart rate belonged to the baby.  The Colemans tried to impeach Dr. Elliott with this inconsistency, but the court sustained Dr. Amon's objection on the grounds that the matter had been settled before

---

[4]      Both Dr. Amon and Dr. Elliott testified as to the relevant standard of care.

trial, presumably referring to the cover-up ruling. The Colemans unsuccessfully moved for reconsideration.

¶31 On appeal, the Colemans do not challenge the superior court's pretrial ruling addressing the alleged cover-up. Instead, they seem to argue they should have been allowed to use the disclosure statement to impeach Dr. Elliott's overall credibility as a witness. Even assuming the issue was not waived, and the superior court should have allowed impeachment of Dr. Elliott on the inconsistencies between his testimony and the disclosure statement, the Colemans have not shown they were prejudiced. The evidence at trial consistently showed the baby was in fact struggling before the delivery; therefore, it is highly unlikely that pointing out discrepancies between the disclosure statement and Dr. Elliott's trial testimony about tracking the baby's heart rate would have affected the jury's verdict. *See Creach*, 189 Ariz. at 214 ("To justify the reversal of a case, there must not only be error, but the error must have been prejudicial to the substantial rights of the party."); *see also* Ariz. R. Civ. P. 61 ("Unless justice requires otherwise, an error in admitting or excluding evidence . . . is not grounds for granting a new trial[.]").

## CONCLUSION

¶32 We hold that A.R.S. § 12-2605 does not violate the Arizona Constitution's provisions on separation of powers, special laws, or privileges and immunities. We also conclude the superior court did not commit reversible error in making its evidentiary rulings. We therefore affirm the judgment.

