NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MARGARITA HENKE, et al., *Plaintiffs/Appellants*,

*v.*

HOSPITAL DEVELOPMENT OF WEST PHOENIX, INC., et al.,
*Defendants/Appellees.*

No. 1 CA-CV 23-0661

FILED 10-08-2024

---

Appeal from the Superior Court in Maricopa County
No.  CV2019-001950
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

---

COUNSEL

Palumbo Wolfe & Palumbo, PC, Phoenix
By Elliot G. Wolfe
*Counsel for Plaintiffs/Appellants*

Gust Rosenfeld, PLC, Phoenix
By Jeffrey McLerran, Charles W. Wirken
*Counsel for Defendant/Appellee Hospital Development of West Phoenix, Inc.*

Holden & Armer, PC, Phoenix
By Michael J. Ryan, Nathan S. Ryan, Carolyn (DeeDee) Armer Holden
*Counsel for Defendants/Appellees Morium Chowdhury, Emergency Group of
Arizona, PC and Quantum Plus, Inc.*

---

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Anni Hill Foster and Judge Angela K. Paton joined.

---

**B A I L E Y**, Judge:

**¶1**        Margarita Henke ("Mrs. Henke") appeals from the superior court's summary judgment for Hospital Development of West Phoenix Inc., dba Abrazo West Campus, and its emergency medical physician, Dr. Morium Chowdhury (collectively, "Defendants").   For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        We view the facts and reasonable inferences in the light most favorable to Mrs. Henke, as the party opposing the summary judgment motion.  *See Windhurst v. Ariz. Dep't of Corr.*, 256 Ariz. 186, 191, ¶ 11 (2023) (citation omitted).

**¶3**        One day in March 2017, Greg Henke ("Mr. Henke") was seen by a medical doctor at urgent care for persistent body aches, chills, and a fever.  The doctor was concerned Mr. Henke had bacterial endocarditis—that is, a bacterial infection of the heart's inner lining—which was potentially life-threatening because Mr. Henke had an artificial heart valve. The doctor directed Mr. Henke to the emergency room "to be evaluated for possible endocarditis."

**¶4**        That same day, Mr. Henke went to the Abrazo emergency room and was examined by Dr. Chowdhury.  After conducting a physical examination, an abdominal and pelvic CT scan and a hematology test, Dr. Chowdhury diagnosed Mr. Henke with "[v]iral syndrome" and discharged him with instructions to follow up with his primary care provider within one to two days.

**¶5**        Mr. Henke died days later.  An autopsy revealed the cause of death was "[c]omplications of sepsis due to acute bacterial endocarditis[.]"

**¶6**        Mrs. Henke brought a wrongful death action against Defendants.   She claimed Defendants negligently failed to provide

reasonably prudent emergency medical care to Mr. Henke and their negligence caused his death.

¶7 Mrs. Henke disclosed two causation expert witnesses: infectious disease specialist Dr. Patrick Joseph and thoracic surgeon Dr. Alexander Marmureanu. Dr. Joseph was disclosed to testify:

> It is also my opinion that the failure of the emergency medicine physician at Abrazo West Campus on March 4, 2017, to evaluate Mr. Henke for endocarditis, as requested by [the urgent care doctor] when he spoke to Nurse Amber at Abrazo, was a cause of, or contributed to, Mr. Henke's death, in that it likely deprived him of a chance of survival.

Dr. Joseph stated he "is unable to quantify the decreased chance of survival due to the lack of specialty consultation, and medical or surgical intervention."

¶8 Dr. Marmureanu was disclosed to testify: "It is my opinion that, if Mr. Henke would have been admitted to the hospital on March 4, 2017, (as he should have been) he would have undergone immediate medical treatment for his sepsis associated with endocarditis, and more likely than not, he would have survived."

¶9 Dr. Chowdhury offered the opinions of infectious disease specialist Dr. Brian Blackburn on the causation issue. Dr. Blackburn was disclosed to testify that he "is aware that Arizona law requires plaintiff to prove her case by clear and convincing evidence, and he will clarify that the chance of survival on March 4, 2017 does not justify a conclusion that survival was highly likely or highly probable at that point."

¶10 Defendants moved for summary judgment, arguing Mrs. Henke failed to establish the *prima facie* elements of medical negligence by clear and convincing evidence. *See* Arizona Revised Statutes ("A.R.S.") section 12-572 (An emergency health professional and emergency department are "not liable for any civil or other damages as a result of any act or omission" unless the elements of proof are "established by clear and convincing evidence."). Defendants asserted Mrs. Henke's causation experts had not opined to "a high degree of medical probability" that the alleged negligence was the proximate cause of Mr. Henke's death.

¶11 After hearing oral argument, the superior court granted Defendants' motion for summary judgment, finding neither causation expert had opined that "if Mr. Henke had been diagnosed with endocarditis

on March 4, 2017, he would have survived to a high degree of medical probability." The court found Dr. Joseph's opinion to be "equivocal" because it did "not state that [Mr. Henke's] death was due to the action or inaction of Dr. Chowdhury, and in fact, he is not able to quantify Mr. Henke's potential for survival in this situation." The court similarly found Dr. Marmureanu's opinion insufficient to meet the clear and convincing evidence burden because he stated Mr. Henke "more likely than not" would have survived if he had been admitted to the hospital. The court ruled:

> The underlying issue is whether [Mrs. Henke] could prove her case based on these opinions. Certainly, these expert opinions would be admissible at trial and the jury is the finder of fact as to whether [Mrs. Henke] has proven her case by clear and convincing evidence. However, if [Mrs. Henke] were to attempt to elicit testimony from either of these experts that Mr. Henke's death was caused by action or inaction by Dr. Chowdhury to a high degree of medical probability, that testimony would constitute an opinion that was not disclosed prior to trial, which would be inadmissible under Rule 37(c)(1) [of the Arizona Rules of Evidence]. That would leave the jury hearing only the expert opinions as mentioned above. And, ultimately, that would be insufficient to meet the high standard of clear and convincing evidence required by A.R.S. § 12-572. Therefore, as a matter of law, [Mrs. Henke] would not be able to prove her case.

¶12 Mrs. Henke moved to reconsider and attached a supplemental declaration by Dr. Marmureanu in which he opined: "it is highly probable that if on March 4, 2017 during his ER visit, Mr. Henke had undergone the standard endocarditis work-up . . . he would have survived this episode of endocarditis." The superior court denied the reconsideration motion.

¶13 Mrs. Henke timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

I.     Motion for Summary Judgment

¶14 We review de novo a grant of summary judgment, viewing the facts in the light most favorable to the non-moving party. *Tilley v. Delci*, 220 Ariz. 233, 236, ¶ 7 (App. 2009).

**¶15**         Mrs. Henke argues the superior court erred in granting Defendants' motion for summary judgment based on the experts' disclosures before discovery was complete.  She contends her experts' opinions were sufficient for the jury to find that the totality of the evidence makes causation highly probable.

**¶16**         "In medical malpractice actions, as in all negligence actions, the plaintiff must prove the existence of a duty, a breach of that duty, causation, and damages."  *Seisinger v. Siebel*, 220 Ariz. 85, 94, ¶ 32 (2009) (citation omitted).  Under A.R.S. § 12-563, a plaintiff must prove that (1) "[t]he health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances," and (2) "[s]uch failure was a proximate cause of the injury."  *See also Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 384, ¶ 12 (2013) ("In medical malpractice cases, plaintiffs must show that a health care provider breached the appropriate standard of care and the breach resulted in injury.").

**¶17**         Because Dr. Chowdhury is an emergency physician and treated Mr. Henke in the Abrazo emergency room, Mrs. Henke's burden of proof on the *prima facie* elements of medical negligence is clear and convincing evidence.  A.R.S. § 12-572; *see also Stafford v. Burns*, 241 Ariz. 474, 477, ¶ 2 (App. 2007) ("[T]he heightened standard of proof for claims against a health professional set forth in A.R.S. § 12-572(A) applies whenever the acts or omissions plaintiff contends were deficient were provided in the course of evaluating and treating a patient in a hospital emergency department.").  Mrs. Henke had to establish her *prima facie* medical malpractice claim on all substantive elements by clear and convincing evidence, including, as relevant here, whether Defendants' acts caused Mr. Henke's death.

**¶18**         A plaintiff must establish causation using expert medical testimony, unless the malpractice is so "readily apparent" that a jury can infer causation.  *Sampson v. Surgery Ctr. of Peoria, LLC*, 251 Ariz. 308, 311, ¶ 13 (2021) (quoting *Rasor v. Nw. Hosp., LLC*, 243 Ariz. 160, 166, ¶ 32 (2017)).  As the superior court noted, causation was not readily apparent, so Mrs. Henke's experts had to "connect the dots" between the claimed standard of care violation and Mr. Henke's death.  *Id.* at 313, ¶ 23.

**¶19**         Dr. Joseph opined that Dr. Chowdhury's failure to evaluate Mr. Henke for endocarditis "likely deprived [Mr. Henke] of a chance of survival."  Dr. Joseph further stated he was "unable to quantify the decreased chance of survival due to the lack of specialty consultation, and

medical or surgical intervention." Dr. Marmureanu opined that if Mr. Henke had been admitted to the hospital for immediate medical treatment, he "more likely than not" would have survived. Notably, Dr. Marmureanu did not name Dr. Chowdhury in his opinion.

**¶20**        "[A] party who has the burden of proof by clear and convincing evidence must persuade the jury that his or her claim is highly probable. This standard is more exacting than the standard of preponderance of the evidence, but less exacting than the standard of proof beyond a reasonable doubt." *State v. Renforth*, 155 Ariz. 385, 388 (App. 1987). Here, neither expert offered an opinion to a reasonable degree of medical certainty or probability that Dr. Chowdhury's actions caused Mr. Henke's death. *See In re M.H. 2007-001236*, 220 Ariz. 160, 169, ¶ 29 (App. 2008) (clear and convincing evidence of medical issue requires "evidence expressed to a reasonable degree of medical certainty or probability").

**¶21**        Mrs. Henke argues *Sampson* does not apply here because it did not concern an emergency room physician, and thus the clear and convincing evidence standard for causation was not relevant. We disagree. At issue in *Sampson* was whether the jury could infer proximate cause, and whether expert testimony on causation is required in a medical malpractice action. 251 Ariz. at 311, ¶ 11. Those issues are present here. In *Sampson*, our supreme court emphasized that "the requirement of expert testimony in a medical malpractice action is a substantive component of the common law," and that "failure to produce such a witness results in judgment for the defendant[.]" *Id.* at 311–12, ¶ 16 (citing *Seisinger*, 220 Ariz. at 94–95, ¶¶ 35, 38). The court held that in a medical malpractice action, the plaintiff must provide expert medical testimony to show causation under the applicable burden of proof. *Id.* at 311, ¶¶ 12–17. The court concluded that "expert testimony establishing causation was essential . . . [g]iven that even the medical experts did not agree on the cause of death, it is unrealistic to conclude . . . that a jury could properly infer that the early discharge was the probable cause of [the patient's] death." *Id.* at 312, ¶ 21 (internal quotation marks omitted). That holding applies here.

**¶22**        Mrs. Henke also argues the superior court erred by taking the causation issue away from the jury. But Mrs. Henke could not elicit testimony from either causation expert that it was "highly probable" Mr. Henke's death was caused by action or inaction by Dr. Chowdhury, *see Renforth*, 155 Ariz. at 388, or that they believed the "evidence expressed to a reasonable degree of medical certainty or probability," that Dr. Chowdhury caused Mr. Henke's death, *see In re M.H. 2007-001236*, 220 Ariz. at 196, ¶ 29, because those opinions were not disclosed before trial. *See* Ariz. R. Civ. P. 37(c)(1) ("[A] party who fails to timely disclose information, a

witness, or a document required by Rule 26.1 may not use the information, witness, or document as evidence at trial, at a hearing, or with respect to a motion."). And while Mrs. Henke asserts that discovery had not concluded before the court granted summary judgment, she did not seek relief under Rule 56(d), which "prescribes the procedure for seeking additional evidence to combat a summary judgment motion." *Rasor*, 243 Ariz. at 164, ¶ 18.

**¶23** Finally, Mrs. Henke argues that no statute or case requires an expert's opinion on the degree or level of the defendant's fault. She asserts that such testimony would improperly invade the province of the jury, and that "magic words" in a disclosure, declaration, or testimony at trial are not required.

**¶24** There is no dispute that Mrs. Henke's burden of proof in this medical negligence action was clear and convincing evidence. A.R.S. § 12-572. Clear and convincing evidence requires the claim to be "highly probable." *Renforth*, 155 Ariz. at 388. To meet this burden, the causation experts needed to opine to a high degree of medical probability that the alleged standard of care violations proximately caused the death. Failure to do so would leave the jury to speculate on causation, which is not permitted. *Sampson*, 251 Ariz. at 309, ¶ 1.

**¶25** We conclude that Mrs. Henke's disclosed expert opinions were insufficient to meet the clear and convincing evidence standard required under A.R.S. § 12-572, and thus summary judgment was appropriate.

## II. Motion for Reconsideration

**¶26** We review the denial of a motion for reconsideration for an abuse of discretion. *Tilley*, 220 Ariz. at 238, ¶ 16. Mrs. Henke argues the superior court abused its discretion when it denied her reconsideration motion and rejected Dr. Marmureanu's supplemental declaration.

**¶27** Defendants' summary judgment motion put Mrs. Henke on notice of the applicable evidentiary standard. Rule 56(c)(2), Ariz. R. Civ. P., requires the party opposing summary judgment to file a response and "any supporting materials within 30 days after the motion is served." Mrs. Henke failed to submit Dr. Marmureanu's supplemental declaration—or any other expert statements addressing the clear and convincing evidence standard—as part of the summary judgment pleadings. Instead, she argued her causation experts were not required to endorse their own opinions to be clear and convincing or highly probable; she asserted such

conclusions would "invade the province of the jury." Even after Dr. Chowdhury disclosed a causation expert to testify that "Arizona law requires plaintiff to prove her case by clear and convincing evidence, and he will clarify that the chance of survival on March 4, 2017 does not justify a conclusion that survival was highly likely or highly probable at that point," Mrs. Henke offered no response statements from her causation experts on the clear and convincing evidence standard.

**¶28**　　　In her reconsideration motion, Mrs. Henke offered no reason for providing the supplemental declaration only after the court's summary judgment ruling. Instead, she asserted the "law prohibits a medical expert or any other witness from telling the finder of fact his or her opinion on whether the burden of proof has been met." She is incorrect. *See Seisinger*, 220 Ariz. at 94, ¶ 33 (noting that, absent expert testimony, plaintiff could not meet the burden of production under the common law "except when it was 'a matter of common knowledge . . . that the injury would not ordinarily have occurred if due care had been exercised'") (citation omitted). Emergency medicine is not a matter of common knowledge. And as earlier discussed, the jury may not determine causation based on speculation built on inference. *Sampson*, 251 Ariz. at 311, ¶ 13.

**¶29**　　　Ultimately, Mrs. Henke stated, "if Dr. Marmureanu were allowed to give an opinion, it **is** his opinion that . . . it is 'highly probable' that Mr. Henke would have survived this episode of endocarditis." (Emphasis in original.) She thus acknowledges an expert witness can opine about the applicable burden of proof in a medical malpractice action.

**¶30**　　　Motions for reconsideration are not to be used to make new arguments or to present new evidence. *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 57, ¶ 17 n.2 (App. 2007). The superior court did not abuse its discretion in denying Mrs. Henke's motion for reconsideration.

## CONCLUSION

**¶31**　　　We affirm.



AMY M. WOOD • Clerk of the Court
FILED:　AGFV