IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**MARGARITA HENKE, ET AL.,**
*Plaintiffs/Appellants,*

*v.*

**HOSPITAL DEVELOPMENT OF WEST PHOENIX, INC., ET AL.,**
*Defendants/Appellees.*

---

No. CV-24-0259-PR
Filed October 22, 2025

---

Appeal from the Superior Court in Maricopa County
The Honorable Joan M. Sinclair, Judge
No. CV2019-001950
**REVERSED AND REMANDED**

Memorandum Decision of the Court of Appeals, Division One
No. 1 CA-CV 23-0661
Filed October 8, 2024
**VACATED**

---

COUNSEL:

Elliot G. Wolfe (argued), The Wolfe Law Firm, P.C., Phoenix, Attorney for
Margarita Henke, et al.

DeeDee Armer Holden, Michael J. Ryan (argued), Holden & Armer, P.C.,
Phoenix, Attorneys for Morium Chowdhury, M.D., et al.

Jeffrey L. McLerran (argued), Neil A. Berglund, Freeman Mathis & Gary,
LLP, Scottsdale, Attorneys for Hospital Development of West Phoenix, Inc.,
d/b/a Abrazo West Campus

Adam Studnicki, Studnicki Law Firm, P.C., Scottsdale, Attorneys for Amici Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

Rita J. Bustos, Jones, Skelton & Hochuli P.L.C., Phoenix, Attorneys for Amici Curiae Banner Health, et al.

Kory Langhofer, Thomas Basile, Statecraft PLLC, Phoenix, Attorneys for Amicus Curiae Arizona Chamber of Commerce & Industry

———————————

JUSTICE KING authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ, and JUSTICES BOLICK, BEENE, MONTGOMERY, and CRUZ joined.

———————————

JUSTICE KING, Opinion of the Court:

**¶1**        Under A.R.S. § 12-563(2), a plaintiff in a medical malpractice action must prove that "the failure of a health care provider to follow the accepted standard of care . . . was a proximate cause of the injury." This is a prima facie element of a medical malpractice claim.

**¶2**        A separate statute, A.R.S. § 12-572, provides that health professionals and hospitals providing treatment in emergency departments are not liable for damages "[u]nless the elements of proof contained in § 12-563 are established by clear and convincing evidence." This clear and convincing standard of proof is higher than the preponderance of the evidence standard that applies in other medical malpractice actions.

**¶3**        We now consider whether a medical malpractice claim based on treatment in an emergency department fails as a matter of law *solely* because the plaintiff's expert testifies the alleged negligence "likely" caused the injury, instead of testifying to the clear and convincing evidence standard on causation ("highly probable" or "reasonably certain").

**¶4**        The clear and convincing evidence requirement in § 12-572 is the standard of proof for claims based on treatment in an emergency department. It is not a prima facie element of a medical malpractice claim.

2

Where, as here, the plaintiff's expert testifies that the alleged negligence "likely" caused the injury, the plaintiff has established the requisite causal connection between the alleged negligence and the injury under § 12-563(2), such that a jury would not be left to infer or speculate about the element of causation. Accordingly, the plaintiff's claim does not fail as a matter of law solely because of this expert testimony. Instead, the expert testimony and any other relevant, admissible evidence on causation must be considered in determining whether the plaintiff has established causation by clear and convincing evidence.

## BACKGROUND

¶5        On March 4, 2017, Greg Henke visited an urgent care facility, where he was seen by a medical doctor.[1] Henke presented with a fever, headache, chills, and malaise, which began two weeks earlier. After examining Henke, the urgent care doctor became concerned that Henke may have bacterial endocarditis, which is a bacterial infection of the heart's inner lining that can be fatal without treatment. Henke had an aortic valve replacement in 2011, leaving him at risk for infection.

¶6        The urgent care doctor referred Henke that same day to the emergency department at Abrazo West Campus, where his aortic valve replacement procedure had been performed. The urgent care doctor recorded in his notes that (1) the plan of care was for Henke to go to the emergency department "to be evaluated for possible endocarditis," (2) the urgent care doctor called and spoke to a nurse named Amber at Abrazo West Campus's emergency department, and (3) he notified her that Henke was going to that emergency department and reviewed Henke's care with her. The urgent care doctor also testified in his deposition that he wrote a note for Henke to give to the emergency department upon his arrival there.

¶7        Henke left urgent care and immediately went to Abrazo West Campus's emergency department, where Dr. Morium Chowdhury examined him. According to deposition testimony of Henke's wife and

---

[1] Because we are reviewing a decision granting summary judgment in favor of the defendants, we describe the facts in the light most favorable to the plaintiff, the non-moving party. *See Gipson v. Kasey*, 214 Ariz. 141, 142 ¶ 2 (2007).

brother-in-law who were at the emergency department, (1) Henke told Dr. Chowdhury that he previously had an aortic valve replacement surgery at Abrazo West Campus hospital and he was a heart patient, (2) Henke gave the urgent care doctor's note to Dr. Chowdhury and asked her about "what the urgent care doctor suspected," and (3) Dr. Chowdhury read the note, said "I don't think it's this" (or "I doubt it's this"), and then set the note down.

¶8        According to Abrazo West Campus's medical records, Henke complained of "body ache, fever, chills and weakness.  Symptoms started 2 weeks ago while at his private residence."   Also, Henke was "diagnosed last week" with influenza and "[g]iven Tamniflu [sic] with no imprivement [sic]."    At the Abrazo West Campus emergency department, Henke received a computed tomography (CT) scan of his abdomen and pelvis without contrast, a chest x-ray, and hematology tests.  According to the complaint, Henke did not receive proper testing to rule out bacterial endocarditis, such as an echocardiogram.  Dr. Chowdhury diagnosed Henke with a "[v]iral syndrome" and discharged him with instructions to follow up with his primary care provider within one to two days.

¶9        On March 7, Henke had an appointment with his primary care provider, who evaluated Henke for an acute febrile illness, noted his history of having an aortic valve replacement procedure, and documented that a specialist should be contacted to "have infective endocarditis ruled out ASAP."

¶10        On March 9, Henke passed away.  An autopsy revealed the cause of death was "[c]omplications of sepsis due to acute bacterial endocarditis."

¶11        Henke's wife, Margarita Henke ("Plaintiff"), filed this wrongful death lawsuit on behalf of herself and Henke's daughters and parents.  Plaintiff named as defendants Dr. Chowdhury and Hospital Development of West Phoenix, Inc., doing business as Abrazo West Campus (collectively "Defendants").[2]  Plaintiff claims Defendants' medical

---

[2] Although Plaintiff named other defendants in the lawsuit, the issues upon which we granted review do not pertain to those other defendants.

negligence, including the absence of a timely diagnosis and treatment, caused Henke's death.

**¶12** In discovery, Plaintiff disclosed the following two expert witnesses on causation: (1) Dr. Patrick Joseph, M.D., a board certified specialist in infectious disease, and (2) Dr. Alexander Marmureanu, M.D., who is board certified in thoracic surgery and general surgery. In their signed declarations, Dr. Joseph and Dr. Marmureanu both stated, "No written discovery has yet been received, and no depositions have yet been taken. As a result, these are my preliminary opinions" that may be supplemented if necessary.

**¶13** Dr. Joseph's declaration stated in relevant part:

> It is also my opinion that the failure of the emergency medicine physician at Abrazo West campus on March 4, 2017, to evaluate Mr. Henke for endocarditis, as requested by [the urgent care doctor] when he spoke to Nurse Amber at Abrazo, *was a cause of, or contributed to, Mr. Henke's death, in that it likely deprived him of a chance of survival* . . . . I am unable to quantify the decreased chance of survival due to the lack of specialty consultation, and medical or surgical intervention.

(Emphasis added.)

**¶14** Dr. Marmureanu's declaration stated in relevant part:

> It is my opinion that, if Mr. Henke would have been admitted to the hospital on March 4, 2017, (as he should have been) he would have undergone immediate medical treatment for his sepsis associated with endocarditis, and *more likely than not, he would have survived*. During the hospital work up, a surgical consult should have been requested, and next an echocardiogram should have been done. A treatment plan would have been then formulated based on the ECHO findings. If the echocardiogram would have shown any abnormal surgical pathology, surgery would have been performed, and *more likely than not, he would have survived*.

(Emphasis added.)

¶15        In a disclosure statement, Dr. Chowdhury disclosed an expert witness, Dr. Brian Blackburn, M.D., who is board certified in internal medicine and infectious diseases.  This disclosure stated in relevant part:

> Dr. Blackburn is aware that Arizona law requires Plaintiff to prove her case by clear and convincing evidence, and he will clarify that the *chance* of survival on March 4, 2017 does not justify a conclusion that survival was highly likely or highly probable at that point in time.

¶16        Defendants moved for summary judgment, requesting judgment in their favor because Plaintiff's expert declarations failed to establish causation by clear and convincing evidence, as § 12-572 requires.  Defendants based their motion exclusively on the contents of Plaintiff's expert declarations.  Defendants emphasized that Plaintiff's experts did not testify that the "alleged failure to timely diagnose endocarditis as of March 4, 2017, caused Mr. Henke's death *to a high degree of medical probability*."

¶17        The trial court granted summary judgment in favor of Defendants.  The court explained that "[w]here causation is not readily apparent, as in this case, 'expert causation testimony is necessary,'" quoting from *Sampson v. Surgery Center of Peoria, LLC*, 251 Ariz. 308, 312 ¶ 19 (2021). According to the court, Plaintiff's expert opinions were "insufficient to meet the high standard of clear and convincing evidence required by A.R.S. § 12-572" because neither "stated that Dr. Chowdhury's action or inaction caused the death of Mr. Henke to a high degree of medical probability." Thus, "as a matter of law, the Plaintiff would not be able to prove her case."

¶18        Plaintiff moved for reconsideration and attached a supplemental declaration of Dr. Marmureanu, which stated:

> At the time of my preliminary declaration dated September 2019, I was only asked to opine on Mr. Henke's workup and management during his ER visit on March 4, 2017.
>
> It was my opinion that more likely than not, if Mr. Henke had a proper endocarditis workup, followed by hospital admission for medical/surgical treatment, he would not have died. I would like to reemphasize that even though no specific treatment for endocarditis was provided on March 4, 5, 6, 7

and 8, 2017, Mr. Henke remained stable, until just before his death.

In my opinion, it is highly probable that if on March 4, 2017 during his ER visit, Mr. Henke had undergone the standard endocarditis work-up, associated with IV antibiotic administration, followed by hospital admission for medical/surgical management, he would have survived this episode of endocarditis.

I have not been deposed.

The court denied Plaintiff's motion for reconsideration.

¶19       The court of appeals affirmed the grant of summary judgment in favor of Defendants. *See Henke v. Hospital Dev. of W. Phoenix*, No. 1 CA-CV 23-0661, 2024 WL 4441666, at *3 ¶ 20 (Ariz. App. Oct. 8, 2024) (mem. decision). The court noted that "neither expert offered an opinion to a reasonable degree of medical certainty or probability that Dr. Chowdhury's actions caused Mr. Henke's death." *Id.* Plaintiff's causation experts "needed to opine to a high degree of medical probability that the alleged standard of care violations proximately caused the death," and their failure to do so would leave the jury to speculate on causation, which is prohibited by *Sampson*. *Id.* at *4 ¶ 24. The court concluded that Plaintiff's "disclosed expert opinions were insufficient to meet the clear and convincing evidence standard required under A.R.S. § 12-572, and thus summary judgment was appropriate." *Id.* at *4 ¶ 25.

¶20       The court also affirmed the denial of Plaintiff's motion for reconsideration, noting that "[m]otions for reconsideration are not to be used to make new arguments or to present new evidence." *Id.* at *5 ¶ 30.

¶21       We granted review to determine whether a medical malpractice claim against an emergency medicine health professional and hospital fails as a matter of law where a plaintiff's causation expert testifies the alleged negligence "likely" caused the injury, an issue of statewide

7

importance that is likely to recur.[3]  We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶22**        "[W]e review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the party against whom summary judgment was entered." *Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267 ¶ 10 (2021).  We review de novo the interpretation of statutory provisions.  *See Rasor v. Northwest Hospital, LLC*, 243 Ariz. 160, 163 ¶ 11 (2017).

## A.  Applicable Standards Of Proof In Medical Malpractice Actions

**¶23**        "In medical malpractice actions, as in all negligence actions, the plaintiff must prove the existence of a duty, a breach of that duty, causation, and damages." *Seisinger v. Siebel*, 220 Ariz. 85, 94 ¶ 32 (2009). The Arizona Legislature codified some of these elements in § 12-563:

> Both of the following shall be necessary elements of proof that injury resulted from the failure of a health care provider to follow the accepted standard of care:
>
> 1. The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances.
>
> 2. Such failure was a proximate cause of the injury.

**¶24**        At issue here is the element of causation, which requires a plaintiff to show "a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produces an injury, in whole or in part, and without which the

---

[3]  We also granted review on a second issue—whether the trial court erred in denying Plaintiff's motion for reconsideration.  Because of our conclusion on the first issue, this second issue is now moot and we will not consider it.

injury would not have occurred." *Sampson*, 251 Ariz. at 311 ¶ 15 (quoting *Barrett v. Harris*, 207 Ariz. 374, 378 ¶ 11 (App. 2004)).

**¶25** "A plaintiff must generally prove the elements of his medical malpractice claim by a preponderance of the evidence." *Stafford v. Burns*, 241 Ariz. 474, 477 ¶ 9 (App. 2017); *see also Aileen H. Char Life Int. v. Maricopa Cnty.*, 208 Ariz. 286, 291 ¶ 11 (2004) (stating "the usual rule [is] that a plaintiff must establish each element of a civil action by a preponderance of the evidence"). "The preponderance of the evidence standard requires that the fact-finder determine whether a fact sought to be proved is more probable than not." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 25 (2005). Consequently, a plaintiff in a medical malpractice action must generally prove that the failure to follow the accepted standard of care more probably than not caused the injury.

**¶26** In 2009, however, the Legislature adopted § 12-572, which heightened the standard of proof to clear and convincing evidence for medical malpractice claims against health professionals or hospitals based on treatment in emergency departments. *See, e.g.*, *Seisinger*, 220 Ariz. at 93 ¶ 30 ("[T]he legislature is empowered to set burdens of proof as a matter of substantive law . . . ." (quoting *Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 336 ¶ 21 (2009))). Section 12-572(A) addresses claims against health professionals:

> Unless the elements of proof contained in § 12-563 are established by clear and convincing evidence, a health professional . . . who provides or who is consulted to provide services to a patient of a licensed hospital in compliance with the emergency medical treatment and labor act [42 U.S.C. § 1395dd] is not liable for any civil or other damages as a result of any act or omission.

And § 12-572(B) addresses claims against hospitals:

> Unless the elements of proof contained in § 12-563 are established by clear and convincing evidence regarding the acts or omissions of a licensed hospital or its agents and employees in cases that are covered by [§ 12-572(A)], the hospital is not liable for any civil or other damages as a result of any act or omission.

¶27            "Clear and convincing evidence . . . reflects a heightened standard of proof that indicates that 'the thing to be proved is highly probable or reasonably certain.'  This standard places a heavier burden upon one party to prove its case to a reasonable certainty."  *Kent K.*, 210 Ariz. at 284–85 ¶ 25 (quoting Black's Law Dictionary 577 (7th ed. 1999)); *see also Thompson v. Better-Bilt Aluminum Products Co.*, 171 Ariz. 550, 557 (1992) ("Clear and convincing evidence means that which may persuade that the truth of the contention is highly probable." (citation modified)); *State v. Renforth*, 155 Ariz. 385, 388 (App. 1987) ("[A] party who has the burden of proof by clear and convincing evidence must persuade the jury that his or her claim is highly probable.  This standard is more exacting than the standard of preponderance of the evidence . . . .").

## B.  Interpretation Of § 12-563 And § 12-572

¶28            Defendants argue that Plaintiff's claim fails as a matter of law because Dr. Joseph and Dr. Marmureanu did not testify to a high degree of medical probability that Henke would have survived if Defendants had met the standard of care, citing § 12-563 and § 12-572.  We begin by interpreting the text of § 12-563 and § 12-572.

¶29            Section 12-563 explicitly sets forth "necessary elements of proof" for a medical malpractice claim.  Section 12-563(2) specifies that one element of the claim is causation—that the failure to follow the accepted standard of care "was a proximate cause of the injury."

¶30            In § 12-572, the Legislature required the "clear and convincing evidence" standard of proof for malpractice claims based on treatment in emergency departments.  Notably, § 12-572 does not provide that clear and convincing evidence is itself an element of the claim.  Instead, § 12-572 requires that "the elements of proof contained in § 12-563 [must be] established by clear and convincing evidence" before liability is imposed.  Thus, § 12-572 identifies the standard of proof, which is the factfinder's degree of confidence in the evidence presented in support of the claim.  *See Beck v. Neville*, 256 Ariz. 415, 422 ¶ 23 (2024) ("The function of a standard of proof . . . is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" (quoting *Addington v. Texas*, 441 U.S. 418, 423 (1979))); *Renforth*, 155 Ariz. at 386 ("[A]ll the factfinder can acquire

is a belief of what *probably* happened. The intensity of this belief—the degree to which a factfinder is convinced that a given act actually occurred—can, of course, vary." (quoting *In re Winship*, 397 U.S. 358, 370 (1970) (Harlan, J., concurring))).

¶31 Thus, § 12-563 codifies some prima facie elements of a medical malpractice claim. And § 12-572 serves a different purpose, by setting forth the standard of proof required to convince a factfinder of those elements when the claim is based on treatment in an emergency department. The higher standard of proof in § 12-572 raises the requisite degree of the factfinder's confidence in the evidence, but it does not change the elements of the claim in § 12-563.

¶32 This distinction between the elements of a claim and the standard of proof is consistent with Arizona case law. Indeed, we recently recognized this distinction in *Beck*. 256 Ariz. at 419–24 ¶¶ 11–27. There, after determining that Arizona recognizes a certain common law claim, we addressed the "elements" of such claim and then separately addressed the "standard of proof" for such claim, noting that "[n]o Arizona court . . . has set forth the quantum of proof required to establish all the elements." *Id.* at 422 ¶ 22.

¶33 The Revised Arizona Jury Instructions ("RAJIs") also illustrate the distinction between the elements of a medical malpractice claim and the standard of proof. The RAJIs have causation instructions for ordinary medical negligence and for negligence from treatment in an emergency department, which are the same in relevant part. *See* Rev. Ariz. Jury Instr. (Civ.) Medical Negligence 1 (7th ed. 2025); RAJI Medical Negligence 2. Separately, the RAJIs have specific instructions for the standards of proof. *See* RAJI Medical Negligence 2 ("[Plaintiff] must prove by clear and convincing evidence that [defendant] was negligent and [defendant]'s medical negligence was a cause of injury to [plaintiff]."); RAJI Standard 3 (Burden of Proof, Clear and Convincing); RAJI Standard 2 (Burden of Proof, More Probably True).

¶34 Defendants seek to conflate two distinct legal concepts: the prima facie elements of a claim and the standard of proof. The elements of a medical malpractice claim require the plaintiff to produce evidence that establishes the existence of a duty, a breach of that duty, causation, and damages. *See Seisinger*, 220 Ariz. at 94 ¶ 32; § 12-563. The standard of proof

is the degree of confidence the factfinder has in that evidence. *See Beck*, 256 Ariz. at 422 ¶ 23; *Renforth*, 155 Ariz. at 386–88; § 12-572. Notably, § 12-563's elements of proof remain the same regardless of whether the standard of proof is preponderance of the evidence or clear and convincing evidence. *See Seisinger*, 220 Ariz. at 94 ¶ 32; §§ 12-563, -572. Thus, the higher standard of proof in § 12-572 for treatment in emergency departments requires the factfinder to reach a greater degree of confidence in the evidence, but it does not modify the elements of the claim in § 12-563.

¶35　　　　We have one additional observation about § 12-572. As noted, Defendants rely exclusively on Plaintiff's expert declarations in arguing that causation has not been established by the clear and convincing evidence standard in § 12-572. But § 12-572 does not reference expert testimony, much less state that the clear and convincing evidence standard is exclusively met through expert testimony. Section 12-572 is silent on what type of evidence a plaintiff must present to satisfy the clear and convincing evidence standard. Thus, the Legislature did not mandate *how* § 12-572's clear and convincing evidence standard is met.

## C. Arizona Case Law Regarding Medical Expert Testimony On Causation

¶36　　　　Defendants cite *Seisinger* and *Sampson* in support of their position that judgment in their favor is warranted because Plaintiff's expert testimony fails to establish causation by clear and convincing evidence. We now address each case in turn.

¶37　　　　In *Seisinger*, this Court considered the constitutionality of A.R.S. § 12-2604(A) (Supp. 2008), which requires that a person be licensed as a health professional and meet other criteria to give expert testimony on the appropriate standard of practice or care in a medical malpractice action. 220 Ariz. at 87–88 ¶¶ 1–5. As this Court has the authority under article 6, section 5(5) of the Arizona Constitution to promulgate procedural rules, *Seisinger* considered whether the Legislature's enactment of § 12-2604(A) infringed on this Court's constitutional authority. *Id*. at 87 ¶ 1, 88 ¶ 7, 96 ¶¶ 42, 44.

¶38　　　　In evaluating the separation of powers issue, *Seisinger* noted that "Arizona courts have long held that the standard of care normally must be established by expert medical testimony," and this Court's decisions

"teach that a plaintiff cannot satisfy the burden of proving a required element of [medical malpractice] in the absence of a very specific kind of evidence. To establish the requisite standard of care, Arizona cases do not accept just any kind of expert witness, but rather demand a physician." *Id.* at 94 ¶ 33, 95 ¶ 37. As *Seisinger* explained, "the requirement of expert testimony in a medical malpractice action is a substantive component of the common law governing this tort action," and thus "§ 12-2604(A) is properly viewed as a modification of that substantive common law, not merely as a change in procedure." *Id.* at 95 ¶ 38, 96 ¶ 41. Accordingly, *Seisinger* held that § 12-2604(A) is substantive in nature and does not violate the separation of powers doctrine. *Id.* at 96 ¶ 42.

¶39 *Sampson* involved the death of a child after he returned home from a scheduled tonsillectomy and adenoidectomy. 251 Ariz. at 310 ¶¶ 3–5. The child's mother filed a medical malpractice claim, alleging the defendants kept her son in the post-operative anesthesia care unit for an insufficient length of time (61 minutes) before discharge. *Id.* at 310 ¶¶ 3–7. This Court observed that "[a]s medicine in general and, more specifically, advanced medical techniques involve extensive professional training, in most instances the applicable standard of care, and the probable consequences of failing to meet that standard, are beyond ordinary lay knowledge." *Id.* at 311 ¶ 16. Therefore, to "establish the requisite causal connection, the plaintiff's expert is generally required to testify as to *probable* causes of the plaintiff's injury." *Id.* (quoting *Benkendorf v. Advanced Cardiac Specialists Chartered*, 228 Ariz. 528, 530 ¶ 8 (App. 2012)). "[E]xpert causation testimony is necessary unless causation is 'readily apparent to the jury on the facts.'" *Id.* at 312 ¶ 19 (quoting *Rasor*, 243 Ariz. at 166 ¶ 32); *see also id.* at 311 ¶ 13 (citing *Seisinger*, 220 Ariz. at 94 ¶ 33, for the proposition that absent expert testimony, plaintiff could not meet the burden of production "except when it was a matter of common knowledge . . . that the injury would not ordinarily have occurred if due care had been exercised" (citation modified)).

¶40 The "expert testimony establishing causation was essential" in *Sampson*, as "[d]isagreement existed even over the cause of [the child's] death." *Id.* at 312 ¶ 21. This Court stated that such causation must be shown to be probable—not merely possible. *Id.* at 313 ¶ 23. But the plaintiff's expert in *Sampson* "did not opine that insufficient observation was the probable proximate cause of [the child's] death. Rather, he opined that greater observation 'could have' allowed [defendant's] personnel to

resuscitate [him]." *Id.* at 312 ¶ 17. The expert's "failure to connect the dots between the premature discharge and [the child's] death would leave the jury to infer that Surgery Center's failure to observe was the proximate cause," which was insufficient as a matter of law to prove causation. *Id.* at 313 ¶ 23.

**¶41** *Sampson* was very clear about its holding: "We hold today that a jury in a medical malpractice case may not be left to 'infer' causation without the guidance of expert testimony where the cause of death is disputed and not obvious to an ordinary person." *Id.* at 309 ¶ 1. *Sampson*, therefore, establishes the standard for satisfying the element of proximate causation in § 12-563(2), so that a jury is not left to infer causation in medical malpractice cases.

**¶42** Although *Seisinger* and *Sampson* address expert testimony in the context of medical malpractice actions, neither case addresses § 12-572's clear and convincing evidence standard or what evidence a plaintiff may use to establish causation by clear and convincing evidence under § 12-572. Is a plaintiff limited exclusively to medical expert testimony when seeking to prove causation by clear and convincing evidence? Or may a plaintiff use medical expert testimony *and* other evidence? *Seisinger* and *Sampson* do not answer these questions.

### D. Consideration Of Expert Testimony And Other Evidence On Causation

**¶43** In this case, Plaintiff did not merely offer expert testimony that Defendants' alleged negligent conduct "could have," "may have," or "possibly" caused Henke's death. *See Sampson*, 251 Ariz. at 313 ¶ 23. Instead, Plaintiff offered expert testimony that Defendants' alleged conduct "more likely than not" caused Henke's death. This testimony "connect[ed] the dots" between the alleged negligence and Henke's death, such that a jury is not left to infer or speculate about causation. *Id.* Indeed, as acknowledged by counsel for Dr. Chowdhury at oral argument, if this was not an emergency medicine case, Plaintiff's expert testimony would be sufficient to establish causation by a preponderance of the evidence. Thus, Plaintiff has sufficiently established at the summary judgment stage that the alleged failure to follow the accepted standard of care "was a proximate cause of the injury." § 12-563(2).

**¶44**     We are now left to determine whether only medical expert testimony may move the needle on causation from a preponderance of the evidence to clear and convincing evidence.  Defendants have not identified any Arizona case holding that expert testimony is the exclusive evidence that may be considered in determining whether causation has been established by clear and convincing evidence.  Indeed, as Dr. Chowdhury acknowledges, "no Arizona case specifically has held that an expert must testify to a high degree of medical probability to establish proximate causation under A.R.S. § 12-572."

**¶45**     Whether causation is "probable" or "highly probable" is determined from the totality of relevant, admissible evidence in the record. *See Saide v. Stanton*, 135 Ariz. 76, 78 (1983) ("The use or refusal of an expert to use a 'magic word' or phrase such as 'probability' is not determinative. The trier of fact is allowed to determine probability or lack thereof if the evidence, taken as a whole, is sufficient to warrant such a conclusion."). The factfinder in a medical malpractice action must be able to consider expert testimony and other relevant, admissible evidence in determining whether a plaintiff has proven causation by clear and convincing evidence. *See Jamas v. Krpan*, 116 Ariz. 216, 217 (App. 1977) (explaining that although a jury may need expert testimony to determine whether a physician deviated from the accepted standard of care, "it does not necessarily follow that the jury, having been informed of community standards, is incompetent to judge the nature or gravity of the deviation; i.e., whether it was simple negligence or reckless disregard of the safety of the patient").

**¶46**     Indeed, the factfinder may be persuaded that other evidence in the record shifts causation from a preponderance of the evidence to clear and convincing.  Take the following example: A patient passes away in the emergency room under the care of Dr. Smith.  In a highly emotional state, Dr. Smith texts her sister, "I'm sorry, I'm really upset and not in the right state of mind to make it to our dinner tonight.  A patient just died.  I'm kicking myself because if I had acted with more urgency to schedule immediate surgery, he would still be alive today."  Under Defendants' theory, the medical malpractice claim would fail as a matter of law solely because the expert declaration failed to articulate that causation was "highly probable" or "reasonably certain," in spite of Dr. Smith's relevant statement against interest on the issue of causation.

¶47        There are also other factors that a factfinder may consider relevant to whether causation has been established by a preponderance of the evidence or clear and convincing evidence, including the medical expert's credibility, demeanor, experience, and reasoning behind the testimony.  Thus, § 12-572 requires that the element of causation in § 12-563(2) be established by clear and convincing evidence after the consideration of expert testimony and any other relevant, admissible evidence on causation.

¶48        As to the case before us, Plaintiff presented evidence indicating that the urgent care doctor discerned a particular condition and directed Henke to the emergency department with a note about what he suspected and a phone call to the emergency department to discuss Henke's care.  The emergency department doubted, and ultimately rejected, the urgent care doctor's suspicions.  Shortly thereafter, Henke's primary care provider evaluated him and expressed concern about the same condition the urgent care doctor had suspected.  Two days later, Henke died of that same condition.  This additional evidence must be considered, along with expert testimony and any other relevant, admissible evidence, in determining whether Plaintiff has proven causation by clear and convincing evidence.

¶49        We express no view as to whether Plaintiff will ultimately prove causation by clear and convincing evidence.  We simply note that, in some cases, a jury is fully capable of considering the natural, unbroken sequence of events, along with expert testimony and any other relevant, admissible evidence, to determine whether causation has been proven by the applicable standard of proof.  *See Sampson*, 251 Ariz. at 313 ¶ 22 (discussing the requirement for plaintiff to "establish that the failure to observe [the child] for a longer period caused his death by starting a natural and continuous sequence of events, unbroken by any intervening causes").

### E.  Motions For Summary Judgment And The Function Of The Jury

¶50        We now address Plaintiff's contention that "whether the weight of evidence on any issue is 'clear and convincing' is exclusively a function of the fact-finding jury, not the judge."

¶51        In *Orme School v. Reeves*, this Court held that a motion for summary judgment "should be granted if the facts produced in support of

the claim or defense have so little probative value, *given the quantum of evidence required*, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." 166 Ariz. 301, 309 (1990) (emphasis added). The "quantum of evidence" that may be considered includes the clear and convincing evidence standard. *Id.* at 307–08 (noting "it is difficult for a court to determine whether a specific quantum of evidence is 'clear and convincing' without evaluating and weighing that evidence, at least to some minimal extent"); *see also Thompson*, 171 Ariz. at 557–58 (holding a summary judgment motion "must be denied if a reasonable jury could find the requisite evil mind by clear and convincing evidence" and "the motion should be granted if no reasonable jury could find the requisite evil mind by clear and convincing evidence").

**¶52** Thus, we disagree with Plaintiff that the clear and convincing evidence standard has absolutely no role in the trial court's consideration of a summary judgment motion. There may be instances where a court properly grants summary judgment based on the evidence and applicable standard of proof. *See Orme School*, 166 Ariz. at 309 ("[A]ffidavits that contain inadmissible evidence, that are internally inconsistent, that tend to contradict the affiant's sworn testimony at deposition, and similar items of evidence may provide a 'scintilla' or create the 'slightest doubt' and still be insufficient to withstand a motion for summary judgment."). To be clear, however, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Id.* (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)); *see also Thompson*, 171 Ariz. at 558 ("Because in granting or denying such a motion [for summary judgment] the judge is not a fact finder, the evidence and all reasonable inferences that may be drawn from the evidence should be construed in a light most favorable to the non-moving party.").

**¶53** Our decision today does not preclude Defendants from moving for summary judgment on remand after further discovery. If that occurs, however, the trial court must not rely solely on expert testimony on causation in considering the summary judgment motion. Instead, the court must consider whether causation is readily apparent based on the evidence; if it is not, the court must consider expert testimony and any other relevant, admissible evidence on the issue of causation. *See* Ariz. R. Civ. P. 56.

### F. The Policy Reasons Behind § 12-572

¶54        As a final matter, Defendants and amici have urged us to decide this case in a manner consistent with the policy reasons underlying the Legislature's enactment of § 12-572.  We note that § 12-572 lacks a declaration of "public policy," as the Legislature has provided in other contexts.  *See, e.g.*, A.R.S. § 46-401 (declaring "the public policy of this state" as it relates to child support and public assistance programs); A.R.S. § 45-801.01 (declaring "[t]he public policy of this state and the general purposes of this chapter" with respect to water supplies).  The text of § 12-572 is the only pronouncement to which the Legislature agreed, and our holding today is consistent with the plain meaning of § 12-572.  *See, e.g.*, *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286 ¶ 31 (2023) (noting that we determine the meaning of a statute "according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise").

### CONCLUSION

¶55        We reverse the trial court's judgment in favor of Defendants, and remand to the trial court for further proceedings consistent with this Opinion.  We also vacate the court of appeals' memorandum decision.